A. H. RALEIGH, APPELLANT, *v.* SALT LAKE CITY, RESPONDENT.

MONEY ILLEGALLY COLLECTED AS TAXES—HOW, WHEN AND FROM WHOM IT MAY BE RECOVERED—PAYMENT UNDER PROTEST.

Where taxes are paid under protest and compulsion, and under an invalid ordinance, an action may be had on a count for money had and received (1) against the treasurer, the officer making the collection, or (2) against the municipality to whom it is paid. If against the former, the action must be brought within six months from the time the money is collected, under section 3147, Comp. Laws Utah 1888; if against the latter, within two years from the time the money is received by the city, under section 3145, Id., and an action can-

not be brought against the city when the plaintiff has elected to bring it against an officer.  Such action can, in general, be maintained (1) when the tax was illegal and void, and not merely irregular; (2) it must have been paid under compulsion or its legal equivlalent; (3) it must have been paid over by the collecting officer, and have been received to the use of the municipality; (4) the party must not have elected to proceed in any remedy he may have had against the assessor or collector.

(No. 946.   Decided July 2, 1898.)

Appeal from district court, Salt Lake county; A. N. Cherry, *Judge.*

Assumpsit by A. H. Raleigh against Salt Lake City for money had and received.  Defendant had judgment, and plaintiff appeals.  *Reversed.*

*F. S. Richards* and *Aurelius Miner*, for appellant:

"Where an illegal tax is paid, under protest, to one who has authority to enforce its collection, it is an involuntary payment, and may be recovered back, if the tax is illegal."   *Sandwich Glass Co.* v. *Barton*, 4 Met. 181; *Joyner* v. *School District*, 3 Cush. 567; *Grimm* v. *School District*, 57 Pa. St., 434; *Trumbull* v. *Campbell*, 8 Ill. 502; *Bradford* v. *Chicago*, 25 Ill. 349; *Laumon* v. *De Moines Co.*, 29 Ia. 310; *Hubbard* v. *Brainard*, 35 Conn. 563; *Hendy* v. *Soule*, Deady 400; *First National Bank* v. *Watkins*, 21 Mich. 483; 21 Mo. 143; 44 Mo. 436; 20 Pa. St. 421; 5 Gill (Md.) 244; 6 Gray 679; 30 Me. 404; 6 R. I. 235; 20 Ind. 301; 46 Cal. 589; 42 Ill. 336; 17 Mass. 563; 41 N. H. 185.

*William C. Hall*, for respondent.

The payments of the sprinkling tax, made by the ap-

pellant and his assignors, were voluntary payments, as the word "voluntary" is defined by the authorities and cannot be recovered back in an action of assumpsit against the municipality. Cooley on Tax. 2d Ed. 805; 2 Dillon on Municipal Corporations, 4th Ed. secs. 940, 942, 947; *Phelps* v. *Mayor of N. Y.*, 112 N. Y. 216; *Maxwell* v. *San Louis Obispo*, 71 Cal. 446; *Hagar* v. *Reclamation Dist.*, 111 U. S. 701; *U. P. Ry. Co.* v. *Comm.*, 89 U. S. 541; *Little* v. *Bowers*, 137 U. S. 547.

A threatened sale of property for taxes, when the sale would be illegal, does not amount to coercion. *Williams* v. *Corcoran*, 46 Cal. 553; *De Baker* v. *Carillo*, 52 Cal. 473; *Wills* v. *Austin*, 53 Cal. 152; *Dear* v. *Varnum*, 80 Cal. 86; *Mayor of Baltimore* v. *Lefferman*, 45 Am. Dec. 145, and note page 164-166; *First National Bank* v. *Mayor*, 45 Am. Rep. 476; *Ellston* v. *Chicago*, 89 Am. Dec. 361, and note page 366; *Detroit* v. *Martin*, 34 Mich. 170; s. c. 22, Am. Rep. 512.

MINER, J.:

This action was brought by plaintiff and appellant to recover several sums of money stated in 148 different causes of action set forth in the complaint, which sums were paid the defendant through its treasurer by the plaintiff and his assignors, upon a void sprinkling tax, assessed and attempted to be collected by the defendant treasurer against each of the assignors. The testimony offered by the plaintiff was undisputed, and tended to show, and the court found, that the payments were made by the plaintiff and his assignors in August, 1893, to H. T. Duke, treasurer of the defendant, upon a sprinkling tax, afterwards declared void by the supreme court. The undisputed evidence shows that the payments of such tax by the plaintiff and his assignors were made under pro-

test, and that, before they were made, defendant, through its treasurer, had demanded such payments, and had threatened to enforce the collection of such tax by advertisement and sale of the property. The property had been advertised for sale in payment of said taxes in a daily newspaper. Upon this point no findings of fact were made. The taxes were paid under protest August 3, 1893, and this action for money had and received was commenced on the 29th day of July 1895. Upon the trial the court found that the several causes of action were barred by the provisions of section 3147, Comp. Laws Utah 1888. Subdivision 2 of this statute provides that an action against an officer for money paid to any such officer under protest, as collector of taxes, and which it is claimed ought to be refunded, shall be commenced within six months. This action was not brought against the officer collecting the taxes. Had it been so brought, that statute, if pleaded, would have been a bar to recovery. That section of the statute referred to was intended to protect a de facto officer, as such, by shortening the time of limitation of actions against him, as he was required to settle and pay the money collected over to the city at frequent intervals. His tenure of office was not long, and if any irregularity existed in the tax levy, or in the payment thereof, it was desirable that such matters could be corrected while it was still in the hands and control of one acquainted with the facts, that corrections might readily be made. But such act was not intended to limit the time in which actions for money had and received could be commenced against the city, after having received the money. This action was brought against the principal, the city of Salt Lake, for money had and received. The plaintiff had a choice of remedies. He could sue the officer, who illegally collected the money, or could

sue the city, who illegally received it. Having waived his right against the officer, and electing to hold the city, the six-months' statute does not apply. Section 3145, Comp. Laws Utah 1888, would be applicable, but under it the remedy was not barred until the lapse of two years. The remedy selected by the appellant against the city was in assumpsit for money had and received. This is held to be the proper remedy in such cases. Judge Cooley, in his excellent work on Taxation (page 815), says: "The proper action against a corporation in these cases is assumpsit for money had and received, the liability not attaching until the money is paid over, and being then based upon the receipt of the money, and not upon the illegalities which preceded it. The recovery must be limited to the money received; while in an action of trespass against the assessors, or trespass or trover against the collector, the party might recover such actual damages as he could show he had sustained." On page 805, the same author says: "But, in general, the action could only be maintained when the following conditions are found to concur: (1) The tax must have been illegal and void, and not merely irregular; (2) it must have been paid under compulsion or the legal equivalent; (3) it must have been paid over by the collecting officer, and have been received to the use of the municipality; (4) the party must not have elected to proceed in any remedy he may have had against the assessor or collector." The sum for which the city is liable must, in general, be what was collected and paid over for itself. Blackw. Tax Titles, 187; 2 Desty, Tax'n, 198, 1435; *City of Grand Rapids* v. *Blakely*, 40 Mich. 367; *Phelps* v. *Thurston*, 47 Conn. 477; *Louden* v. *East Saginaw*, 41 Mich. 22; *Raisler* v. *Athens, etc.*, 66 Ala. 194. It follows that the section of the statute referred to created

no bar to this action against the corporation for money had and received.

It is claimed by the respondent that the payments of the several taxes were voluntarily made, without any compulsion, and that they cannot be recovered back. It is clear that merely paying a tax under protest does not make the payment voluntary.     Something more is required.    Under the law as it then stood, the real question in such a case is whether there was such an immediate necessity for the payment of the tax in controversy as to imply that such payment was made under compulsion.    In the case of *Preston* v. *City of Boston*, 12 Pick. 14, Chief Justice Shaw lays down the rule as follows:    "When, therefore, a party not liable to taxation is called upon peremptorily to pay upon such warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress, and, by showing that he is not liable, recover the money back as money had and received."    This, we thi k, is the true rule.    *Railway Co.* v. *Commissioners* 98 U. S. 541; *Erskine* v. *Van Arsdale*, 15 Wall. 75.    Judge Cooley lays down the rule that a payment made to relieve the person from arrest or the goods from seizure is a payment on compulsion, and so is the payment made to prevent a seizure when it is threatened.    So, with still greater reason is the payment which the officer secures by making sale of goods seized.    But it is not necessary for the taxpayer to wait for his goods to be sold or even to be seized.    If the officer calls upon the person taxed, and demands a sum of money under a warrant directing him to enforce it, the party of whom he demands it may fairly assume that, if he seeks to act under the warrant at all, he will make it effectual.    The demand itself is equivalent to a service of the writ on the person.    *     *     *

It is sufficient if the circumstances are such as fairly lead to the conclusion that the waste and expense can be avoided only by payment. So, payment of a water tax under threat of cutting off the water is a payment under compulsion. And it is held in some cases that a payment is to be regarded as compulsory even though it is not shown that the collector had a warrant, if it is actually made to avoid an expected levy on property which would have followed in due course of law." Cooley, Tax'n, p. 814; *Detroit* v. *Martin*, 22 Am. Rep. 519; Blackw. Tax Titles (4th Ed.) 187. The case of *Pettit* v. *Duke*, 10 Utah, 311, was pending to restrain the collection of the sprinkling tax in the same district when the taxes in question were paid under protest. In that case it was urged by the collector that a sale of the property for a void tax would not create a cloud upon the title, and that the parties had a complete remedy at law by paying the illegal tax, and then sue to recover back the sum paid. But the court held that the sale of the property by the collector would create a cloud upon the title of 200 pieces of land, and not only cause irreparable injury to the owners, but would produce a multiplicity of suits, and ordered an injunction to issue. Under such holding, if a cloud would be created upon the title, by a sale under the circumstances of that case, it is evident that the owners were justified in paying the tax under protest, in order to avoid such cloud upon their title. In the present case the demand was made on each taxpayer by the treasurer for the payment of an illegal sprinkling tax. A portion of the property covered by the levy of the same tax was advertised for sale in a public newspaper by the treasurer, in order to collect such void tax. The taxes were paid under protest, and the receipts given therefor were so indorsed by the treasurer. Such facts show a compul-

sory and involuntary payment of the taxes sued for by many of the parties who assigned their claims to the plaintiff, including the plaintiff himself. We are of the opinion that the court erred in finding all the causes of action barred by the statute of limitations, and are also of the opinion that the judgment is not supported by the evidence. There is doubt in our minds as to the sufficiency of the testimony under the pleadings in this case to sustain all the several causes of action set up in the complaint. It is therefore ordered that the cause be reversed, with directions to the trial court to vacate and set aside the judgment, and to grant a new trial.

ZANE, C., J., and BARTCH, J., concur.