### EDWARD THOMPSON CO v. MAYNARD.

1. Garnishment—Judgment Against State—Process.
   Judgment for plaintiff against State as garnishee after service of process upon governor and attorney general is affirmed by an equally divided court (Comp. Laws 1929, §§ 176, 16204).

2. Costs—Public Question.
   No costs are allowed where controlling questions involved in case are of a public nature.

Appeal from Ingham; Carr (Leland W.), J. Submitted June 19, 1934. (Docket No. 131, Calendar No. 37,818.) Decided October 23, 1934. Rehearing denied December 11, 1934.

Garnishment proceedings in justice court by Edward Thompson Company, a foreign corporation, against Perry A. Maynard, principal defendant, and the State of Michigan, garnishee defendant. Judgment for plaintiff. Garnishee defendant appealed to circuit court. From judgment for plaintiff, garnishee defendant appeals. Affirmed by equally divided court.

*Marshall, Searl & Dean,* for plaintiff.

*Patrick H. O'Brien,* Attorney General, *Ralph E. Hughes* and *Judson E. Richardson,* Assistants Attorney General, for garnishee defendant.

North, J. (*for affirmance*). By this appeal in the nature of certiorari the question presented is whether or not the State of Michigan is subject to garnishment process. There is also the question as to whether jurisdiction may be obtained by service of process on the governor and attorney general. Leave having been granted, the State has appealed from a decision in the circuit court holding affirmatively on each of the above questions.

The State being sovereign, suit in its own courts cannot be maintained against it except the sovereign State by its own laws so provides. *Aplin, Auditor General,* v. *Van Tassel, Treasurer of Tuscola County,* 73 Mich. 28; *McDowell* v. *Warden of Michigan Reformatory at Ionia,* 169 Mich. 332. Such a provision as to garnishment proceedings is embodied in the statutes of this State.

"All corporations of whatsoever nature, whether foreign, domestic, municipal or otherwise, *and the State of Michigan,* may be proceeded against as garnishees in the same manner and with like effect as individuals." 3 Comp. Laws 1929, § 16204.

The italicized words were inserted in the above section by amendment in 1919. Act No. 233, Pub. Acts 1919. In view of the foregoing statutory provision there can be no question in this jurisdiction as to the legislative intent. *Auditor General* v. *Wayne Circuit Judge,* 234 Mich. 540. But the attorney general in behalf of the State points out that the statute does not designate any officer of the

State upon whom service of process can be made. In this connection it is asserted that since garnishment proceedings are statutory, it cannot be said service of process in manner sufficient at common law would be valid service in a statutory garnishment. The argument is that there being no statutory provision for service upon the State of garnishment process, therefore the State is not subject to garnishment and especially must this be true because no statutory provision is made for collection or satisfaction of a judgment in garnishment rendered against the State. The questions presented are so well considered in the opinion of the learned circuit judge that we quote:

''This brings us to the consideration of the question as to whether any general principle of the common law authorizes service on the State in any particular manner in the absence of the express provisions of statute. In 59 C. J. p. 327, it is said:

'' 'Where proceedings are authorized against the State, but there is no express provision as to the service of process, the State may properly be brought into court by service upon the governor and attorney general, or apparently either of such officers.'

''In the early case of *Chisholm* v. *Georgia,* 2 Dall. (2 U. S.) 419, the supreme court of the United States had before it the question as to the existence of a common-law rule or principle of the character referred to. It was contended there, on behalf of the State of Georgia, that jurisdiction over it could not be obtained in the absence of express designation by law of some official, or officials, on whom process might be served. The court, however, rejected this contention, recognized the existence of the common-law rule, and held that service on the governor and the attorney general was binding.

''Following the determination of the supreme court in *Chisholm* v. *Georgia,* the question has been involved in several cases, cited in Corpus Juris,

wherein the conclusion with reference to the existence of the common-law rule referred to has been followed. The statement of the general principle as laid down in the text appears to be well supported by authority, and does not appear to have been questioned by any court of last resort.

"While the 11th amendment of the Federal Constitution forbade the extension of the judicial power of the United States to suits against a State by citizens of another State, or of a foreign nation, it cannot be said, as I view the situation, that the common-law rule with reference to the service of process in any duly authorized action against the State was thereby affected. The decision in *Chisholm* v. *Georgia, supra,* did not, as above indicated, create the rule. Rather it merely recognized its existence. Rendering impossible certain cases in which the rule might be applied, obviously does not affect its application in other cases.

"Counsel for the garnishee defendant relies on the decision of the Supreme Court of this State in *Milwaukee Bridge & Iron Works* v. *Brevoort, Wayne Circuit Judge,* 73 Mich. 155. It was there held that in the absence of express provision of statute governing the matter, a writ of garnishment could not be served upon a foreign corporation. In other words, the Supreme Court, by necessary inference, declined to recognize the existence of any common-law rule or principle with reference to the service of process on foreign corporations, declaring such service to be a matter of statutory regulation. The matter of such service on a State, where express legislative authority to bring the action has been granted, was not involved. The decision, as I view it, may, in consequence, be properly regarded merely as authority for the proposition that the common-law principle as summarized in Corpus Juris, and as applied in *Chisholm* v. *Georgia* and the other decisions referred to, did not extend to and include

the service of process on corporations. The reasons for the nonexistence of any such rule with reference to corporations do not require discussion at this time.

"The intent of the legislature to subject the State to garnishment proceedings is not open to question. As indicated in *Auditor General* v. *Wayne Circuit Judge*, 234 Mich. 540, the provisions of the statute are clear. We may not assume that it was intended to declare a right but to withhold any method of procedure for obtaining the benefit of such right. It is fair to assume that the legislature had in contemplation the principle of the common law as applied in *Chisholm* v. *Georgia* and in other cases. The statutes of Michigan making the governor and the attorney general the legal representatives of the State and defining their powers and duties as such are in keeping with this theory. It is of course fundamental that the intention of the legislature should not be defeated if such result can be avoided.

"The conclusion follows that Act No. 233, Pub. Acts 1919, is not inoperative for the reasons urged and that in the instant case service of summons in garnishment was sufficient."

We are in full accord with the opinion of the circuit judge and the judgment entered in the circuit court. It is affirmed. The question adjudicated being of public concern no costs will be awarded on this appeal.

NELSON SHARPE, C. J., and WIEST and BUTZEL, JJ., concurred with NORTH, J.

WIEST, J. (*concurring in affirmance*). I concur in the opinion of Mr. Justice NORTH.

The statute waived the immunity of the State but did not prescribe the service of the writ of garnishment on the State. Service was made on the governor and the attorney general.

It is the duty of the attorney general, upon request of the governor, to "appear for the people of this State * * * in any cause or matter, civil or criminal, in which the people of this State may be a party or interested." 1 Comp. Laws 1929, § 176.

When the attorney general appears for the people of the State in any matter within the jurisdiction of a court he fully represents the State.

As said in *People, ex rel. Attorney General,* v. *Railway Co.,* 157 Mich. 144, 157, relative to the attorney general:

"It seems to be a rule of common sense and sound reason that the principal is responsible for the acts of his agent whom he has not only expressly authorized, but has commanded, to act for him. The statute provided no other way for the State to get into court than through these two officers as agents of the State."

Except for the procedure employed to bring the State of Georgia before the court, the case of *Chisholm* v. *Georgia,* 2 Dall. (2 U. S.) 419, has no bearing upon the case at bar. In that case the issue, with which we are concerned, was stated by the attorney general as follows:

"Is the service of the summons upon the governor and attorney general of the State of Georgia, a competent service?"

The court retained jurisdiction under such service.

I find two justices expressed opinions upon the service of process.

Justice Blair stated:

"With respect to the service of the summons to appear, the manner in which it has been served, seems to be as proper as any which could be devised

for the purpose of giving notice of the suit, which is the end proposed by it, the governor being the head of the executive department, and the attorney general the law officer, who generally represents the State in legal proceedings; and this mode is the less liable to exception, when it is considered, that in the suit brought in this court, by the State of Georgia against Brailsford and others (2 Dall. [2 U. S.] 402), it is conceived in the name of the governor in behalf of the State."

Justice Cushing stated:

"The third question respects the competency of service, which I apprehend is good and proper; the service being by summons and notifying the suit to the governor and the attorney general; the governor who is the supreme executive magistrate and representative of the State, who is bound by oath to defend the State, and by the Constitution to give information to the legislature of all important matters which concern the interest of the State; the attorney general, who is bound to defend the interests of the State in courts of law."

NELSON SHARPE, C. J., and NORTH and BUTZEL, JJ., concurred with WIEST, J.

POTTER, J. (*for reversal*). Plaintiff, having a judgment against the principal defendant, instituted garnishment proceedings against the State of Michigan, serving the writ of garnishment upon the governor and the attorney general. The trial court held this service good. Appellant contends that Act No. 314, Pub. Acts 1915, chap. 76, § 30, as amended by Act No. 233, Pub. Acts 1919, being 3 Comp. Laws 1929, § 16204, is not operative against the State in as much as no officer or officers of the State, or other State agency, is designated by the statute upon whom service of process may be made.

The trial court held the service was good at common law, and the common law would be used for the purpose of amplifying the statute which provides only that the State shall be liable to garnishment.

The cases cited to sustain the validity of the service made are all based upon *Chisholm* v. *Georgia,* 2 Dall. (2 U. S.) 419. The majority opinion in that case was the subject of derision immediately after it was rendered, and so generally regarded as unsound that it was reversed by the 11th amendment of the Constitution of the United States.

The question involved was whether an action of assumpsit would lie against a State, without its consent, by a citizen of another State.

It was as apparent the dissenting opinion of Mr. Justice Iredell was the law before the majority opinion was repealed and set aside by the 11th amendment to the Constitution as it was afterward.

Van Santford, in his "Lives of the Chief Justices," says that as a legal argument the opinion of Mr. Justice Iredell must be regarded as far superior to the opinion of the majority. The position of Mr. Justice Iredell as to the suability of a State by a citizen of another State was expressed by John Marshall in the Virginia debates on the adoption of the Federal Constitution, and by Alexander Hamilton in the Federalist. General W. R. Davie, one of the framers of the Constitution, a lawyer of eminent ability, thought Mr. Justice Wilson's argument "the rhapsody of some visionary theorist," and he referred to the opinion of Chief Justice Jay as having been transplanted from some speech in the Jacobin Club, or the satire of Peter Pindar.

The chief justice, stung by the vitriolic denunciation of the majority opinion, resigned from the bench. It is apparent, in the light of modern re-

search, the majority opinion was entitled to the treatment it received from the bar and the public.

Professor Ames has fully discussed the origin of assumpsit in his article, ''The History of Assumpsit,'' published in 2 Harvard Law Review, p. 1, and republished as essay No. 59, in ''Select Essays on Anglo-American Legal History.'' He says:

''In its origin an action of tort, it was soon transformed into an action of contract, becoming afterwards a remedy where there was neither tort nor contract. Based at first only upon an express promise, it was afterwards supported upon an implied promise, and even upon a fictitious promise. Introduced as a special manifestation of the action on the case, it soon acquired the dignity of a distinct form of action, which superseded debt, became concurrent with account, with case upon a bailment, a warranty, and bills of exchange, and competed with equity in the case of the essentially equitable *quasi*-contracts growing out of the principle of unjust enrichment.'' 3 Select Essays in Anglo-American Legal History, p. 298.

In ''Diversity of Courts and their Jurisdictions,'' translated into English in 1646, it is claimed the king is the fountain of justice, and may sit and give judgment in all cases personal or real. He was regarded as the source of sovereignty and exercised supervisory control over the administration of the law under what has been aptly called the ''prerogative of grace.''

In the ''Mirror of the Justices'' (Robinson's Ed.), it is said, in the section on ''Of the Constitutions made by the Ancient Kings,'' that:

''It was ordained that the king's courts should be open to all plaints by which they had original writs without delay, as well against the king or the queen

as against any other of the people." Mirror of the Justices (Robinson's Ed.), p. 25.

There is no claim even by Horne, the author of the Mirror of the Justices, that that statement represented the law as it then existed. He was careful to ascribe the suability of the king and queen to a resolution of an ancient king, without naming him. In his own time, he declared the first and chief abusion of the common law to be, "That the king is above the law, whereas, he ought to be subject to it." Mirror of the Justices (Robinson's Ed.), p. 231.

Pollock & Maitland, in their History of English Law, say:

"As for the deliberate fables of later apocryphal authorities, the Mirror of the Justices being the chief and flagrant example, they belong, not to the Anglo-Saxon, but to a much later period of English law. For the most part, they are not even false history; they are speculation or satire." 1 Pollock & Maitland's History of English Law (2d Ed.), p. 28.

"Bracton, no mere text writer, but an experienced judge of the highest court, says plainly that writs do not run against the king. 'Our lord, the king, cannot be summoned to receive a command from anyone'—this comes from a judgment of the king's court in 1234, 'Our court is not above us, and cannot summon nor compel us against our will,'—this comes from a writ tested by Herbert de Burgh in 1223. This positive evidence is strong; the negative evidence is overwhelming." 1 Pollock & Maitland History of English Law (2d Ed.), p. 516.

The whole subject of the suability of the king, or crown, is fully discussed by the writers on pages 511 to 526 in their History of English Law.

Holdsworth says:

"The king is a master ·who is in a peculiar position because he cannot be sued." 3 Holdsworth History of English Law (3d Ed.), p. 388.

"The idea which in later law appears in the form of the maxim that the king can do no wrong is in this period simply the application of the ordinary rule that a lord cannot be sued in his own court." 3 Holdsworth History of English Law (3d Ed.), p. 462.

"It is true that the king could not be sued in his own courts. Whatever doubts there may have been in the thirteenth century as to the existence of a power in the assembled baronage to coerce the king, his incapacity to be thus sued had been a recognized principle of English law since Bracton's days; but this is no peculiar privilege, for no feudal lord could be sued in his own court. It is remarkable that in Edward III's reign, judges could be found who believed the fable told by a counsel in 1307, that there had been a time when the king was sued in his own courts like an ordinary person." 3 Holdsworth History of English Law (3d Ed.), p. 465.

Pollock & Maitland refer to these fables of the English law, and particularly to those promulgated by the Mirror of the Justices:

"We have seen that it was recognized in Henry III's reign that the king could not be sued in his central courts of law because, like any other lord, he could not be sued in his own courts. But it was admitted that the king, as the fountain of justice and equity, could not refuse to redress wrongs when petitioned to do so by his subjects. * * * It became an established rule that the subject, though he could not sue the king, could bring his petition of right and if acceded to by the king, would enable the

courts to give redress." 9 Holdsworth History of English Law, p. 8.

Blackstone, a judge of high standing, first Vinerian professor of law at Oxford, in his "Commentaries," which fairly represent the condition of the English law as received by the American States, says:

"That no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him." 1 Blackstone's Commentaries (Jones Ed.), p. 362.

"No action will lie against the sovereign." 2 Brown and Hadley's Commentaries, p. 274.

"The king cannot be sued for any tort or breach of contract." Odgers, The Common Law of England (2d Ed.), p. 1426.

"The power of justice and mercy belong to the king only, they belong only to the supreme power. The law of God, of nature, and of nations created kings; which law is not alterable by any creature." Jenkins, 8 Centuries of Reports, Case No. 55, p. 79 (145 Eng. Rep. 56).

If the king or queen of England was subject to be sued as an ordinary person in the courts of the kingdom by service of process upon them, petition of right was worse than futile.

The theory of the nonsuability of the sovereign was adopted by the government of the United States, which may not be sued. Claims may be presented against it in the court of claims created by it; suit in the court of claims being practically equivalent to a petition of right to the crown of England. *United States* v. *O'Keefe,* 11 Wall. (78 U. S.) 178; *Carlisle* v. *United States,* 16 Wall. (83 U. S.) 147.

"In one important particular the two proceedings are alike, for both end with the recovery of the judgments. After they are obtained, it depends in England on the parliament, and in this country on congress, whether or not they shall be paid." *United States* v. *O'Keefe, supra.*

The kings of England were not subject to ordinary legal or equitable process at the suit of individuals. The nearest approach to that was the authority granted to individuals by petition of right, to humbly, as subjects, by petition, supplicate the interposition by the king of the sovereign prerogative of grace, to grant them compensation, and, though disavowing any intention to disregard parliamentary enactments or customary law, the king sometimes granted dispensations of grace. Disclaiming the exercise of final supervisory judicial power, the king frequently reversed judgments of conviction in the criminal courts of his kingdom, granting reprieves, commutations of sentence, and pardons.

At common law, the individual could not maintain suit against either the king, the parliament of England, or the kingdom, and civil process might not be served upon the king or the attorney general in suits by private individuals at common law. The holding of the majority of the members of the supreme court of the United States in *Chisholm* v. *Georgia, supra,* in the light of modern historical research, is clearly erroneous and unsound. There was not then, and never had been, any such common-law rule as that erroneously assumed.

A petition of right is entitled in the king's bench division, the chancery division, or in the probate, divorce and admiralty division, according to subject matter. It must be addressed to the king; state the

name and usual place of abode of the suppliant and of his solicitor, and set forth the facts entitling suppliant to relief. It must be left with the home secretary for submission to the king, who may grant or refuse his fiat at his pleasure. *Tobin* v. *Rex,* 14 C. B. (N. S.) 504 (8 L. T. 392, 143 Eng. Rep. 543).

It is not the absolute duty of the attorney general to advise the grant of the king's fiat, even though the petition discloses reasonable and probable ground of claim. 10 Halsbury's Laws of England, p. 31.

The fiat may be granted to a whole or a part of the petition, and may be either absolute or qualified. *Bankers Case,* 14 State Trials 1, 59; 10 Halsbury's Laws of England, p. 31.

The petition cannot be set down for trial until the fiat of the king has been granted. *In re Mitchell,* 12 T. L. R. 324; 10 Halsbury's Laws of England, p. 31.

The English practice and procedure upon petition of right is set forth in 10 Halsbury's Laws of England, pages 26 to 35, where the authorities are collected, and the erroneous assumption of an analogous applicable practice existing at common law assumed by the majority opinion in *Chisholm* v. *Georgia, supra,* is fully, clearly, correctly and conclusively demonstrated.

There is, so far as I have been able to ascertain, no case where suit was commenced against the king, the crown, or the kingdom of England, by the service of process upon the king or the attorney general; and to claim there exist common-law precedents for such action, and that by analogy this State, where the people are the source of sovereignty and have succeeded to all the prerogative rights of the king, may be sued by service of process upon the governor and attorney general is relying upon imaginary precedents which have no existence in fact.

The statutes provide:

"All corporations of whatsoever nature, whether foreign, domestic, municipal or otherwise, and the State of Michigan, may be proceeded against as garnishees in the same manner and with like effect as individuals under the provisions of this chapter, and the rules of law regulating proceedings against corporations and the provisions of law regulating the service of summons from justice court upon such corporations in other cases, shall be applicable to the service of summons in garnishment cases, and such service may be made in the same or any adjoining county." 3 Comp. Laws 1929, § 16204.

Section 14095, 3 Comp. Laws 1929, provides for service upon foreign corporations by service upon the secretary of State.

Section 14096, 3 Comp. Laws 1929, provides that service against foreign insurance companies may be made upon the commissioner of insurance.

Section 14098, 3 Comp. Laws 1929, provides:

"In suits or proceedings against municipal and public corporations, and certain unincorporated boards, service of process may be made as follows:

"1. Against counties, upon the chairman of the board of supervisors or the county clerk;

"2. Against the superintendents of the poor of counties, upon any of the said superintendents;

"3. Against cities, upon the mayor, city clerk or city attorney;

"4. Against villages, on the president or clerk of the village, or in their absence upon any of the trustees thereof;

"5. Against townships, upon the supervisor or township clerk;

"6. Against school districts, upon the president of the board of education, director, moderator or treasurer of such district;

"7. Against any corporate body or unincorporated board, now or hereafter having charge or control of any State institution, where the right to bring such suit or proceeding is conferred by law, upon the president, secretary or any member of the governing body thereof;

"8. Notices, writs, or other process in judicial proceedings may be served upon any common council, board, commission, or other public body organized or existing under any law of this State, when by statute no other method of service is specially provided, by delivering the same or a certified or verified copy thereof to the president or chairman of such council, board, commission or body, or to the clerk or secretary thereof, and it shall be the duty of the officer upon whom such service shall be made, at its next meeting, to inform such common council, board, commission, or other public body of such service, and it shall not be necessary to serve notices, writs, or other process upon the individual members of such common council, board, commission, or other public body, and such council, board, commission, or other public body may appear and answer or plead in such proceedings in such manner as it may direct."

Section 14093, 3 Comp. Laws 1929, provides for the service upon transportation lines and railroads.

The words "State of Michigan," as used in 3 Comp. Laws 1929, § 16204, mean a body politic and corporate, *McPherson* v. *Blacker, Secretary of State,* 92 Mich. 377 (16 L. R. A. 475, 31 Am. St. Rep. 587); and it is not included, so far as the service of process is concerned, in the statutes above quoted or in any others.

In *Fry* v. *Equitable Trust Co.,* 264 Mich. 165 (90 A. L. R. 175), it was held the executive department of government in this State has no prerogative powers.

"The apportionment of power, authority and duty to the governor, is either made by the people in the Constitution, or by the legislature in making laws under it." *People, ex rel. Sutherland,* v. *Governor,* 29 Mich. 320 (18 Am. Rep. 89).

"The legislature has all power not prohibited to it by the State or Federal Constitution. The governor can exercise only such power as is granted to him by the State Constitution." *Clark* v. *Boyce,* 20 Ariz. 544, 548 (185 Pac. 136).

"All sovereign power is vested in the people; and the chief executive has no prerogative powers, as in monarchal governments, but only such powers as are vested in him by the Constitution as the fundamental law." *Richardson* v. *Young* (syllabus), 122 Tenn. 471 (125 S. W. 664).

"The Constitution of a State is a limitation upon the powers of the legislative department of the government, but it is to be regarded as a grant of powers to the other departments. Neither the executive nor the judiciary, therefore, can exercise any authority or power except such as is clearly granted by the Constitution." *Bridges* v. *Shallcross,* 6 W. Va. 562, 575.

"A governor of a State is a mere executive officer; his general authority very narrowly limited by the Constitution of the State; with no undefined or disputable prerogatives; without power to effect one shilling of the public money, but as he is authorized under the Constitution, or by a particular law; having no color to represent the sovereignty of the State, so as to bind it in any manner, to its prejudice, unless specially authorized thereto." Mr. Justice Iredell (dissenting) in *Chisholm* v. *Georgia, supra,* 446.

The Constitution of this State divides the powers of government into three departments, the legis-

lative, executive and judicial, and provides that no person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in the Constitution. Constitution, article 4.

There is no more reason, based upon the constitutional division of powers of government in this State, to hold the executive department constitutes the State than there is that the legislative department constitutes the State, or that the judicial department constitutes the State. The executive officers of the State are only the temporary representatives of particular departments of government. In *Aplin, Auditor General,* v. *Regents of University of Michigan,* 83 Mich. 467 (10 L. R. A. 376), it was said:

"The legislature is not the State, but only a department of the State."

So, in this case, while the statute provides a writ of garnishment may issue against the State, it does not provide for the method of service, and the executive officers of the State are not the State, but are only representatives of a particular department of the State, namely, the executive department. It is well settled that the State can only be recognized by the courts as a suitor in legal proceedings through the agents or representatives appointed by law to speak and act in its name in the matter in hand; and, unless in the given case the proper agent or representative is present, in legal contemplation the State is not present, and this presence of such agent or representative can be made known and attested only by the record. *People* v. *Navarre,* 22 Mich. 1.

Garnishment is a harsh remedy, in derogation of the common law, existing only by statute which must be rigidly construed and not extended by construction. Common-law rules, even though in existence, have no application here for the reason that this is not a commencement of suit against the State. It is a collateral proceeding, warranted only by statute which must be strictly construed and rigidly followed. No officer being designated by statute upon whom service should be made, this court may not usurp the power and duty of the legislature and declare that service should be made upon certain State officers to the exclusion of others when the legislature has neglected or failed to so provide.

Statutes of garnishment, at best, give a harsh and peculiar remedy and ought not to be resorted to when the redress sought may be obtained through common-law proceedings. *Iron Cliffs Co.* v. *Lahais,* 52 Mich. 394.

Garnishment proceedings are strictly statutory, and the requirements imposed by the statute as to service by writ must be strictly complied with. *Faul* v. *Beucus,* 124 Mich. 25. Authority must be found in the statute for every step taken until jurisdiction is acquired. *Milwaukee Bridge & Iron Works* v. *Brevoort, Wayne Circuit Judge,* 73 Mich. 155. Garnishment proceedings must follow the statute strictly, and can not be extended beyond their plain letter. *Kennedy* v. *McLellan,* 76 Mich. 598.

"Garnishment is an auxiliary proceeding, growing out of and dependent upon another original or primary action or proceeding, and this, regardless of whether it is resorted to in aid of a pending action before judgment, or in aid of an execution for the enforcement of a judgment recovered in the principal action or proceeding, or is commenced concurrently with the principal action." 28 C. J. p. 21.

See, also, *Iron Cliffs Co.* v. *Lahais, supra.*

It may be contended the court should amplify the statute, by writing into it, by construction, the designation of the governor and attorney general as the State officers upon whom service should be made.

The judicial power may not legislate. Even praiseworthy objects may not be obtained by a violation of law. Every effort to fritter away the plain language of the Constitution by judicial construction or otherwise, is an insidious attempt to undermine the fundamental law of the State, vicious in its tendencies and destructive of good government. *McPherson* v. *Blacker, Secretary of State, supra.*

The statutes in relation to garnishment being in derogation of common law, the common law cannot be resorted to for the purpose of adding something to the statutes which has not been granted by the legislature. The common law cannot be resorted to for the purpose of reading into the garnishment statute something which was apparently purposely omitted therefrom.

In *Company A, First Regiment, National Guard Training School* v. *State,* 58 N. D. 66 (224 N. W. 661), it was held that service of process upon persons other than those designated by statute was void and conferred no jurisdiction upon the court.

It seems well settled in this State that though proceedings against a foreign corporation may be authorized by statute, if the statute itself designates no one upon whom service may be had, such garnishment proceedings are not maintainable. In *Milwaukee Bridge & Iron Works* v. *Wayne Circuit Judge, supra,* garnishment proceedings against a foreign corporation were sought to be sustained upon service upon the president of the corporation found within the State on the business of the cor-

poration.  The statutes expressly provided such foreign corporations might be reached by garnishment, and it was contended that some statutory or common-law rules were in force providing for such service.  The court said:

"Jurisdiction in this class of cases must appear upon the papers themselves, or the proceedings will be a nullity.  They are purely statutory, and for every step taken until jurisdiction is acquired authority must be found in the law providing for the proceeding.  *Hebel* v. *Amazon Ins. Co.,* 33 Mich. 400; *Ford* v. *Detroit Dry-dock Co.,* 50 Mich. 358; *Iron Cliffs Co.* v. *Lahais,* 52 Mich. 394.

"Section 8145, How., provides how suits may be commenced in the circuit courts of this State against foreign corporations.  The writ of garnishment and proceedings thereon are always ancillary, and the service of such writ is not the commencement of an action.  *Moore* v. *Speed, Wayne Circuit Judge,* 55 Mich. 84; *Iron Cliffs Co.* v. *Lahais, supra.*  If it is desired to garnish a domestic corporation, How. § 8086, provides how the writ shall be served.  It provides that foreign as well as domestic corporations may be garnished, but it provides no method of service of the writ upon foreign corporations.  How. § 8087, provides how service may be made when the principal defendant is a nonresident, or a foreign corporation, but that is not this case.  Nowhere do our statutes provide for any service of a writ of garnishment upon a foreign corporation."

In all the cases in which the State is made a party, it has been held that service upon some particular officer of the State designated by statute for the purpose of service on the State and to represent the State must be made.

Public officers in this State have no power or authority except that which is derived directly or in-

directly from the people. Neither the governor of this State, nor the attorney general, has any power or authority to bind the State except within the scope of their authority. That authority must be found in the Constitution and laws of the State. Neither the president of a private corporation, nor its attorney, notwithstanding they are creatures of statute, have any power or authority to bind the corporation unless such power and authority is expressly delegated to them, and the governor of the State and the attorney general of the State have no power or authority to bind the people of the State in any case except where they are authorized so to do. There is no statute which says that service in garnishment may be had upon the governor or the attorney general and, in the absence of statutory authority, such service is not good.

If service of process in garnishment proceedings against the State of Michigan is to be governed by common-law rules, I reply there were and are no applicable common-law rules to govern it. Garnishment did not exist at common law, but is a special statutory remedy in derogation of the common law. Notwithstanding the majority opinion in *Chisholm v. Georgia, supra,* an action of assumpsit did not lie at common law against the king, the crown, or the kingdom. The only proceeding recognized at common law that could be taken was a petition of right, and therein no process ran against or was served upon the king.

Prior to the revolution, there were no States in which the sovereignty resided in the people, governed by written Constitution emanating from the people, which provided for the organization of the government and defined the powers and duties of its public officers. No support is lent to the contention

this court should supplement the garnishment statute by writing into it a method of service, by *Chisholm* v. *Georgia, supra,* when construed in the light of its historical setting. The executive department in this State has no prerogative power. No statute prescribes the method of service on the State in garnishment proceedings by making of service upon the governor and the attorney general, or upon either of them. The governor and the attorney general have only such powers as are conferred upon them by law. There is no law which authorizes service of process in garnishment proceedings upon the governor and the attorney general. Garnishment proceedings, being in derogation of the common law, are not to be extended or amplified by common-law rules, even if such common-law rules existed, which they do not.

To hold the service of the writ of garnishment good is to rewrite the garnishment statute by prescribing therein the method of service of the writ when no method is prescribed by statute. It is a legislative function to prescribe upon whom service of a writ of garnishment should be made, and this court may not, under our Constitution, exercise legislative power without undermining the foundations of constitutional government. If the legislature desires to make the defective garnishment statutes effective, it may provide for the service of the writ, but it is not for this court to rewrite the statute by judicial usurpation of legislative power.

I think the service of the writ of garnishment in this case is bad; that the judgment of the trial court should be reversed and the proceedings dismissed, but without costs, a public question being involved.

BUSHNELL, J., concurred with POTTER, J. FEAD and EDWARD M. SHARPE, JJ., concurred in the result.