## STATE v. DISTRICT COURT OF SALT LAKE COUNTY et al.

No. 6350.   Decided August 4, 1942.   (128 P. 2d 471.)

See 59 C. J. States, sec. 489; 25 R. C. L., 417.

For former opinion, see 102 Utah 284, 115 P. 2d 913.

*Grover A. Giles,* Atty. Gen., *S. D. Huffaker,* Asst. Atty. Gen., and *Calvin L. Rampton,* Deputy Atty. Gen., for plaintiff.

*Louis H. Callister* and *Ned Warnock,* both of Salt Lake City, for defendants.

MOFFAT, Chief Justice.

An alternative writ of prohibition was issued on petition of the State of Utah in this original proceeding to enjoin

the District Court of the Third Judicial District and one of the Judges thereof from proceeding in the case of *Garrett Transfer and Storage Company, a Corporation,* v. *The State of Utah.*

The case in the district court is to recover taxes paid under protest under a statute which has been declared unconstitutional by the court. *Carter et al.* v. *State Tax Commission et al.,* 98 Utah 96, 96 P. 2d 727, 126 A. L. R. 1402. By a divided court, the alternative writ was made permanent. *State of Utah* v. *District Court of Salt Lake County, State of Utah et al.,* 102 Utah 284, 115 P. 2d 913, 914. A petition for rehearing was granted. The cause was reargued.

Upon the first hearing, two questions were argued: One, whether the State had consented to be sued in a tax recovery matter such as this; and the other, whether service on the Governor and Attorney General was good service on the State.

In the former opinion in this cause, Mr. Justice Wolfe, speaking for the majority stated:

"By Section 80-11-11, R. S. U. 1933, it is evident that the State of Utah has consented to be sued for the recovery of a tax deemed unlawful by the party against whom the tax is enforced, if the tax is paid under protest."

The only question now for consideration is a question of procedure. The record shows that the complaint was filed. A motion to quash, vacate and set aside the service of summons was made by the Attorney General for and on behalf of the State. The motion was denied. The State then filed a demurrer to the complaint. The demurrer was overruled. The State then brought this proceeding in prohibition.

We are of the opinion it was error to make the alternative writ of prohibition permanent. What defense, if any, or whether the proper parties are before the court in the original proceeding is a matter to be tried and determined by the trial court, if the service of summons is good.

In any civil action involving the use of water, if a general determination of the rights to the use of water has not already been determined, ·the court may proceed to make a general determination. In such action, "the state of Utah shall be joined as a necessary party." Section 100-4-18, Revised Statutes of Utah 1933. No procedure or method of service on the State is provided, yet it is apparent the State must be made a party.

Section 20-7-25, Revised Statutes of Utah 1933, provides:

"When jurisdiction is, by statute, conferred on a court or judicial officer, all means necessary to carry it into effect are also given; and in the exercise of jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the statute or of the codes of procedure."

In the case of *Baker* v. *Department of Registration,* 78 Utah 424, 3 P. 2d 1082, 1088, the aforesetforth section was considered and cases bearing upon the scope of the section are cited. Among other things, the court stated:

"There is nothing in the language of section 1813 [now Section 20-7-25, supra] which limits the power of the court to such cases. The statute applies alike to all cases where jurisdiction is conferred by statute without regard to whether such jurisdiction is original or appellate."

Just what distinction, functionally considered, there may be found to exist between the State and an authorized agency of the State may not be easy to define. A deprivation of one's property or liberty under an unconstitutional law inflicts a wrong upon the individual. This line of thought was presented in the case of *State* v. *Morgan,* 23 Utah 212, 64 P. 356, at page 361, wherein it was stated:

."When the wrong is the violation of constitutional rights, the legislature has no power to prohibit, or substantially impair, all remedies, as to do so would be a violation of the constitution."

Pursuing the discussion of the power of the courts to guard the rights of persons, it is said that in order to meet new conditions and supply remedies for wrongs where none al-

ready exist the courts from remote time have if possible devised new remedies and procedures "by virtue of their inherent power." It is the duty of the Attorney General to "have charge as attorney of all civil legal matters in which the state is anywise interested." The service of summons upon the Governor and Attorney General is sufficient. Whether there is merit in the alleged cause of action is another matter.

The writ heretofore made permanent is recalled, and the alternative writ and the permanent writ are quashed and set aside.

LARSON, Justice (concurring).

I concur in the opinion of Mr. Chief Justice MOFFAT and also in what is said by District Judge LEVERICH.

LEVERICH, District Judge (concurring).

I concur in the order recalling the writ heretofore made permanent and that the alternative writ be quashed.

Section 80-11-11, Revised Statutes of Utah 1933, provides that the party bringing the action may sue the state, county or municipality, or he may bring the action against the officer to whom the tax was paid. In the former opinion in this case it was concluded that Section 80-11-13 modified Section 80-11-11, to the extent that when action is brought to recover taxes paid to the state, the tax collecting officer of the state and not the state must be the party against whom the action is brought. This interpretation is not justified by the language contained in Section 80-11-13. To reach that conclusion would require reading into this section (80-11-13) much that is not there. This should be done by the legislature and not by the court.

The service of summons upon the Governor and Attorney General is sufficient by virtue of Section 20-7-25, Revised Statutes of Utah 1933, and the inherent power of the court to devise process where none is provided by statute.

WOLFE, Justice (dissenting).

As I analyze this controversy on the writ of prohibition, the first question to be decided is whether the State consented to be sued in its own courts. The apparently express permission given by Sec. 80-11-11 to sue the "State" must be considered in the light of Sec. 80-11-13 and the theory on which the decision in *Raleigh* v. *Salt Lake City*, 17 Utah 130, 53 P. 974, is based to ascertain if the legislature really intended this apparent lifting of immunity to extend beyond that of suing an officer of the state as such without having first to ascertain whether such officer was acting outside of his legal authority constitutionally delegated.

The test of whether a suit against an officer as such is in fact really a suit against the state depends primarily on whether the officer is acting within the authority constitutionally given him. If he is not, it is not a suit against the state. If he is acting constitutionally and within the authority granted him, it is a suit against the state. See cases in the dissenting opinion in the case of *State* v. *District Court of the Fourth Judicial District*, 94 Utah 384, 406, 78 P. 2d 502, 512; *Wilkinson* v. *State*, 42 Utah 483, 134 P. 626. In order, therefore, to determine whether the State through its officer, or the defendant officer in his personal capacity, is the true defendant, the ultimate question as to whether the protested tax was unlawfully levied must ordinarily be decided in order to determine whether or not the defendant officer is being sued as a representative of the state. I had thought that Sec. 80-11-11 merely lifted the immunity of the State from suit to the extent of permitting the collecting officer to be sued without the necessity of deciding the ultimate question at the threshold and that the legislature had not intended to subject the state as such to suit.

In determining whether the legislature intended to grant the right of unrestricted action against the State by Sec. 80-11-11 or only against the collecting officer in his capacity as such officer, it will be helpful to ascertain whether in view of the theory set out in *Raleigh* v. *Salt Lake City*,

supra, Sec. 80-11-13 may be given an interpretation harmonious with such concept.

As before stated, *Raleigh* v. *Salt Lake City*, supra, held that the action for money paid under protest was one for money unlawfully had and received, that the city did not "receive" the taxes until six months after they were paid to the collecting officer and hence the liability of the city for the return of the taxes did not accrue until such time. The matter of fitting Sec. 80-11-11 which provides that "thereupon" ("thereupon referring to the time payment under protest was made) an action may be brought against the "officer to whom said tax or license was paid" or "against the state, county, municipality," etc., with Sec. 80-11-13, where the money is to be retained by the State Treasurer (who ordinarily is not the collecting officer) and the implications of the Raleigh case which is based on reception of the protested payment may require considerable ingenuity.

I had thought in my former opinion that the difficulty of applying the "had and received" theory set out in the Raleigh case where, under the statute, the money was to be retained by the State Treasurer while permitting the collecting officer to be sued in an action for money had and received, would require a holding that Sec. 80-11-11 must be construed as in effect permitting the state to be sued only through its collecting officer. This would, as above stated, have been a partial lifting of the immunity of the state from suit for the reason that where an officer acts within legal authority constitutionally conferred, a suit against him is in effect a suit against the state. I had in mind that the state did not intend by Sec. 80-11-11 to permit itself to be sued except through its collecting officer. This view obviated the necessity of determining whether at any certain time, under the theory of the Raleigh case, the State Treasurer held the moneys for the collecting officer so as to permit the application of the "had and received" theory to him, or whether he held the moneys for the state so as to permit

the application of the "had and received" theory to it, if it was suable as such. The fact that Sec. 80-11-11 permits the action to be brought "thereupon" either against the collecting officer or the state, whilst the money is in the hands of the State Treasurer who is charged, under Sec. 80-11-13, with segregating it from the general funds, requires the protesting payer to make his choice between proceeding against the collecting officer, which he may do for a period of six months under the implications of Sec. 104-2-27, and proceeding against the state. Until he does so it would be impossible to know whether the State Treasurer was holding the protested payments for the collecting officer or for the state in order that the "had and received" theory might be applicable. But it may be concluded that for six months the State Treasurer may be considered as holding the seggregated moneys on behalf of the collecting officer and if the protesting payer sues the officer within six months, for so much longer until the matter is finally determined. On the other hand if the protesting payer sues the state before the expiration of six months and not the officer, he has waived suit against such officer and the collecting officer is thereupon exonerated from suit so that the segregated moneys may be considered then to be held by the Treasurer on behalf of the state for the duration of the pendency of the suit, still, however, not permitting them to become merged with the general revenues. And a fortiori if the protesting payer waits for a period of six months without suing the collecting officer, the moneys can be considered as being held after the expiration of the six months' period by the State Treasurer on behalf of the state for that period of the statute of limitations which would apply to the state, awaiting to ascertain whether the taxpayer brings suit. It would seem that this is the only way in which sections 80-11-11 and 80-11-13 can be fitted in with the theory of the Raleigh case. Or, perhaps, the theory of the Raleigh case might be abandoned and a theory of suit adopted which would enable Sections 80-11-11 and 80-11-13 to be harmon-

iously interpreted and still hold that the legislature intended to permit the state to be sued as such. The result in either case would be such that money paid under protest might be held out of use for a considerable period of time. All of the difficulties could be resolved by a holding that the legislature in Sec. 80-11-11 intended only that the state could be sued through its collecting officer. But it is true that no such restriction appears in Section 80-11-11. On the contrary it provides that the collecting officer or the state may be sued. Perhaps this definite language should be considered as having satisfied the principle that the state cannot be sued in its sovereign capacity in its own courts unless it has consented to such suit, either in the Constitution or by legislative act showing unequivocally an intention to permit it. In this regard I shall bow to the superior wisdom of my associates, but my doubts remain.

This leaves then the question of whether consent to sue the state can be availed of where no method of service is provided. Is it like the case where an office is created calling for a certain salary but no money has been appropriated to pay the salary or to permit performance of the duties imposed? The act becomes inoperative although existing. Statutes which are incapable of enforcement because of ambiguities which cannot be resolved or because essential machinery is lacking or because unintelligible are inoperative.

If the regularly retained attorney at law of a client is served with summons, service is not considered to have been made on the client, nor is service had if the attorney accepts service unless there is authorization for him to do so. An attorney at law presumptively represents the client he appears for and his appearance is then that of his client but the client may show that such appearance was unauthorized. If the client is joined in suit and not served, and an attorney enters an appearance for him it is presumptively by authorization of the client. But such presumption cannot be indulged in case of the sovereign. Of course, in this case there was no appearance by the Attorney General, quite the con-

trary. There was an attempt to serve him on behalf of the state.

The chief executive of the state and its legal adviser and legal representative are given certain powers, rights and duties to be performed on behalf of the state. Can service be obtained any more upon the State-person by service on the executive or Attorney General without authorization than can be obtained on a person by serving his regularly retained attorney at law where there is no authorization to accept service or no designation of such attorney as his process agent? I think not.

It is the legislature which fixes the powers and duties of its agents—the Governor and Attorney General. Unless the legislature designates the Attorney General and/or the Governor or some other officer as the one on whom service may be made, I do not think service can be had on the state. It is no answer to say that the state has permitted itself to be sued. Suit is permitted against private persons and corporations, against municipal units, and yet in each case service must be made on the person, actually or constructively, as provided by the statute, or upon the representatives designated by the statute, or service is not obtained. No method of service has been designated to obtain service on the sovereign-person for suit by the protesting taxpayer. Are we to hold that the requirements for serving the state are less rigid than those provided for the serving of individuals and corporations?

The first federal case to deal with the subject of service was the famous case of *Chisholm, Ex'r* v. *Georgia,* 2 Dall. 419, 469, 1 L. Ed. 440. The opinions were given seriatim. Justice Iredell held a citizen could not sue a state in the Supreme Court of the United States and therefore did not consider the question on whom service should be made. Justice Cushing, without citation of authority, apprehended that the summons and notification to the Governor

"who is the supreme executive magistrate and representative of the state, who is bound by oath to defend the state, and by the constitu-

tion to give information to the legislature of all important matters which concern the interest of the state; the attorney-general who is bound to defend the interests of the state in courts of law,"

was competent service. The other justices did not seem to voice any opinion on the matter of service. In *Grayson* v. *Virginia*, 3 Dall. 320, 1 L. Ed. 619, decided in 1796 before the 11th Amendment (1798), the court laid down a general rule

"That when process at common law, or in equity, shall issue against a state, the same shall be served upon the governor, or chief executive magistrate, and the attorney-general of such state."

In *State of New Jersey* v. *People of the State of New York*, 1831, 5 Pet. 284, 8 L. Ed. 127, Chief Justice Marshall, after a review of the cases of *Georgia* v. *Brailsford*, 2 Dall. 402, 1 L. Ed. 433; *Oswald* v. *State of New York*, 2 Dall. 415, 1 L. Ed. 438; *Chisholm, Ex'r* v. *State of Georgia; Grayson* v. *State of Virginia; Huger et al.* v. *South Carolina*, 3 Dall. 339, 1 L. Ed. 627, and *Fowler et al.* v. *Lindsey et al.* (*Fowler* v. *Miller*), 3 Dall. 411, 1 L. Ed. 657, held that the previous cases had fixed the method of serving the state. Chief Justice Marshall observed that the Supreme Court in *Grayson* v. *Virginia*, supra, had doubt as to "whether the remedy to compel the appearance of the state should be furnished by the court itself, or by the legislature" (congress).

I think there is a clear distinction between the case where the Constitution has granted to the Supreme Court of the United State the right to entertain exclusive jurisdiction of a suit against a state and the case where the state has consented to suit against it in its own courts. In the first case the people of all the states have granted to the courts of an independent sovereignty the right to entertain suits against the states. Article III, Sec. 2. It failed to specify with the grant any method of obtaining service on the states. If the states then by their legislatures failed to provide for method of service on their respective states and neither Congress nor the Supreme Court of the United States could

provide a method, the grant to the United States of power to entertain a suit against a state would have been useless. In consequence, the Supreme Court under Sections 13 and 14 of the Act of 1789, 1 Stat. 80, 81, establishing judicial courts of the United States, devised a method of obtaining service on the states. Where, however, a state consents to be sued in its own courts, such consent is inefficacious unless it designates the process agent. Such provision may be general, or accompany the consent as a term or condition thereof. We find no general statute providing for service on any designated officer of the state in case it may be sued as such, nor is there any provision for service contained in Sec. 80-11-11. There is only a brief bald provision that the protesting taxpayer may sue the state. I do not think Sec. 20-7-25, R. S. U., can be taken to give the courts power to devise a process summoning into the court the sovereignty which created it. The very nature of sovereignty precludes subjection to the order or summons of one of its agencies. Unless it consents to subject itself to the orders of such tribunal, it is immune. The intention to subject itself must be clear, although it may not in all cases be express. See *Anstine* v. *State,* 137 Neb. 148, 288 N. W. 525.

"It is a general rule that the state is not bound by the general words of a statute, which if applied, would operate to trench on its sovereign rights, injuriously affect its capacity to perform its functions, or establish a right of action against it, unless the contrary is expressly declared or necessarily implied." (Sec. 514, p. 953, Vol. II, Lewis' Sutherland Statutory Construction.)

On the question of whether process may be served on a state as such where no agent for serving process has been designated, the authorities divide. In the case of *Edward Thompson Co.* v. *Maynard,* 269 Mich. 97, 256 N. W. 817, an evenly divided court held that where the state had consented to be sued but no method of serving it had been provided, the Governor or the Attorney General could be served. If these two officers, why not any others? They are equally agents of the state. The Thompson case, as well as Chisholm,

Ex'r v. State of Georgia, is criticized by the court of West Virginia in the case of *State et al.* v. *Bouchelle, Judge et al.*, 119 W. Va. 154, 192 S. E. 169, in the excerpt below quoted.

The other jurisdiction which holds as does Michigan, is Texas. See *Wheeler* v. *State*, 8 Tex. 228, 230, and *State of Texas* v. *Cook*, 57 Tex. 205, at page 208. The Cook case contains no discussion but rests dogmatically on the Wheeler case. The Wheeler case was one in which the State had been sued in a lower court. The question was whether the state could be brought up on a writ of error because no provision had been made for legal citation of the state requiring it to appear. The court thought that it was proper for the sheriff to serve the citation on the district attorney but that the validity of the service would not be affected if served on the attorney general. This illustrates the point, that absent the designation of an officer, there seems to be no reason beyond convenience and propriety why it could not designate as well any state officer.

On the other side are the cases of *State* v. *Bouchelle, Judge*, supra, and *Anstine* v. *State*, supra. In West Virginia the Constitution prohibits the state from being made a defendant, except in garnishment or attachment proceedings. While holding the exception self-executing, the question remained as to whether there existed any way of serving the state with process. The court in this respect says [119 W. Va. 154, 192 S. E. 170]:

"We know of no way under the present law of this state by which the State of West Virginia, as such, can be served with process. Certainly without a method of serving the state with process it is not possible to subject it to the laws of garnishment and attachment. Counsel for the respondents do not urge that the effect of the amendment to section 35 is to adopt for its purpose the present statute law of the state respecting service of process, and to make that law applicable to the state in so far as garnishment and attachment is concerned. Such an argument would be manifestly untenable because it would not be possible to apply every statute that we have on the subject of the service of process, even those applicable to private corporations, to the State of West Virginia and to its various administrative corporations, boards, commissions, bureaus, and institutions.

Neither, we think, could the solution of such a problem, if it could be solved by applying one or more of our present statutes, be addressed to the courts. It is manifestly for the legislative branch.

"Counsel for respondents, however, do advance in opposition to the second point raised by petitioners the contention that without statutory authorization a sovereign state may be served with process through the Governor and Attorney General. They ground this contention upon the case of *Edward Thompson Co.* v. *Maynard*, 269 Mich. 97, 256 N. W. 817, which was an affirmance by an evenly divided court resulting in the holding that a valid service upon the state could be had by means of process delivered to the Governor or the Attorney General. This case, in turn, rested in the main upon *Chisholm [Ex'r]* v. *[State of] Georgia*, 2 Dall. [419], 2 U. S. 419, 1 L. Ed. 440. The reasoning of the latter case has been almost universally assailed, and, of course, the Michigan case is no more than authority in name, since it was a decision by an evenly divided court."

The Nebraska case is otherwise interesting. It holds that even without any express statute so providing, it was manifest that the legislature intended to permit suit by state employees applying for compensation against the state in the compensation court, but concluded,

"* * * that the legislature has failed to provide, as required by section 22, art. V of the Constituion of Nebraska, the manner in which service of process may be had against the state, or a department of the state government, in a compensation case, or upon what officers of the state service is to be had. We further conclude that there is no statutory provision authorizing the attorney general, as the law officer of the state, to enter a voluntary appearance, binding the state, in compensation cases." *Anstine* v. *State*, 288 N. W. 525, at page 530.

The Nebraska case also pays its respect to the excerpt 59 C. J. 327, cited in respondent's brief, as follows:

"In opposition to the foregoing, 59 C. J. 327, is cited, wherein it is said: 'Where proceedings are authorized against the state but there is no express provision as to the service of process, the state may properly be brought into court by service upon the governor and attorney general, or apparently either of such officers.' We have examined the cases cited under note 62: *Port Royal & A. Ry. Co.* v. *State of South Carolina*, C. C., 60 F. 552, in which the state instituted the action and a cross-bill was filed against it. The court held that it was proper to serve the state by making substituted service upon the attorney gen-

eral, by whom the cross-bill was filed. The distinction is apparent. In *State of Texas* v. *Cook,* 57 Tex. 205, the legislature permitted a judge of the criminal district court to institute a suit to determine what amount of salary, if any, was due him as a judge. No mode of service was prescribed, and the court held that service on the governor or attorney general is sufficient. There is a distinct difference between an action against the state, affecting the salary of one individual, and a compensation law affecting all of the employees of the state, and the liability of the state to pay compensation for injuries received in the course of employment. The other case, cited under note 62 above, is of no assistance in determining the question."

The Nebraska case is pointedly significant in one more way. Sec. 27-321 of Compiled Statutes of Nebraska 1929 provides for serving the Governor and Attorney General in a suit against the state. It was held that these process agents were for those actions which specifically came under Sec. 27-319 wherein suit against the state was permitted; moreover it was held that Sec. 20-503 which pertained to the method of serving summons by demanding that the sheriff notify the "defendant or defendants" could not be invoked even though the state was permittedly a defendant, because the

"use of the general language, 'defendant or defendants,' as appearing in section 48-174 Comp. St. Supp. 1937, and section 20-503, Comp. St. 1939, as constituting service against the state, would operate to encroach upon the state's sovereign rights, injuriously affect its capacity to perform its functions, and would establish a right of action against it in a manner which should not be permitted."

It should be noted in this connection that Chapter 120, Laws of Utah 1939, which permits suits against the state in certain instances specifically provides that service may be made upon the Attorney General as a part of the enabling statute. I am convinced that it is necessary for the legislature to designate the process agent on whom summons may be served as part of the complete right and method of suing the state.

I have examined the cases supporting the excerpt from Sec. 54, page 417 of 25 Ruling Case Law. They are all cases

above mentioned which refer to process wherein a state is sued in the Supreme Court of the United States.

I am aware of the pragmatic argument that if the state has expressly consented to be sued its intention could be made to work if 27-7-25 were construed to allow the court to designate a process agent and that complaint could not be made when the legislature had expressly consented that the state be sued in its own courts. I am not moved by that argument because I think it wise that the rule that the legislature should not only consent but should provide the method of suing and designate the process agent as it does with personal, corporate and municipal defendants. The rule is a salutary one which will protect against inadvertences in legislation. In the instant case the plaintiff had six months after protest to sue the Tax Commission. Moneys paid for taxes should not be held out of use for long periods of time unless it is fairly certain that such was the intent.

It is said that under 100-4-18 if the court orders a general adjudication of the rights to the use of water from a river system or water source the state of Utah must be joined as a necessary party. This can be construed only as a notification to the state so that it may protect any rights it holds in a proprietary capacity and as a general representative of the public which has the reversionary rights to all water originally belonging to the public. I opine no binding judgment for money could be obtained against the state in such a suit. Its status in reference to certain water might be adjudicated and especially if it were held in its proprietary capacity under Sec. 104-3-27 as provided by Chapter 120, Laws of Utah 1939.

As stated in the beginning of this opinion, there is a distinct difference on the one hand between legislative consent given to sue an officer of the state as such in order to require him to perform his duties, and even in the case where a money judgment is permitted against him, in the very respect that service may then be had on the officer directly and on the other hand legislative consent to sue

the sovereignty as such. Thus, we have no trouble with that part of Sec. 80-11-11 which permits the collecting officer as a representative of the state to be sued. The money is set aside to permit satisfaction of any such judgment. Service may be had on him personally or, if a commission, on the proper officers representing the Commission. The main opinion need not be perplexed over the distinctions between the state as such and its authorized agencies in this regard.

McDONOUGH, J., I dissent.

PRATT, J., on leave of absence.