## NEILSON et al. v. SAN PETE COUNTY.

### No. 2320.   Decided April 11, 1912 (123 Pac. 334).

1. TAXATION—REFUND—STATUTES.  A claim for a refund of taxes collected on property not subject to taxation is not within Comp. Laws 1907, sec. 511, subd. 7, authorizing the board of county commissioners to settle accounts chargeable against the county, nor within sections 531 and 533, providing for the presentation of claims to the board of county commissioners and for appeals from the action of the board rejecting claims.[1] (Page 566.)

[1] Mining Company v. Juab County, 22 Utah, 395, 62 Pac., 1024.

2. TAXATION—REFUND—ACTIONS—LIMITATIONS. An action for a refund of taxes collected on property not subject to taxation is barred by the four years' statute of limitations, and not by Comp. Laws 1907, sec. 533, limiting the time to sue on claims against a county rejected by the county commissioners. (Page 567.)

3. TAXATION—REFUND—ACTIONS—COMPLAINT. A complaint in an action against a county to recover taxes illegally collected, which alleges that the taxes were levied on real estate mortgages, that plaintiff paid the taxes to prevent a sale of his property, and that he had notified the board of county commissioners in writing that the taxes were on real estate mortgages and were void, and had demanded a refund, and that the board had refused to make a refund, does not state a cause of action within Comp. Laws 1907, sec. 2684, authorizing a party deeming taxes unlawful to pay the same under protest and sue for the taxes paid, but states a cause of action within section 2642, providing that taxes paid more than once, or erroneously or illegally collected, may be refunded by order of the board of county commissioners. (Page 567.)

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—THEORY OF CAUSE IN TRIAL COURT. The rule that an appellant may not on appeal depart from his theory in the trial court does not apply to an appeal from a judgment of dismissal rendered on sustaining a demurrer to the complaint; and the question on appeal is whether the complaint states a cause of action so as to entitle plaintiff either to the relief prayed for or to any substantial relief. (Page 568.)

5. STATUTES—CONSTRUCTION—MEANING OF LANGUAGE. The court in construing a statute must give its language its ordinary and usual meaning, unless restricted by other statutes. (Page 568.)

6. TAXATION—RECOVERY OF TAXES PAID—STATUTES. Comp. Laws 1907, sec. 2684, authorizing a party deeming a tax unlawful to pay the same under protest and sue therefor, permits a taxpayer to contest the right of a county to collect a tax by paying it under protest and then suing to recover it, but a taxpayer must indicate the tax he deems unlawful, and pay it under protest to lay a foundation for an action to contest its legality, and, before the board of county commissioners may order a refund thereof, the illegality of the tax must be established in a court of competent jurisdiction.[2] (Page 568.)

7. TAXATION—RECOVERY OF TAXES PAID—STATUTES. Comp. Laws 1907, sec. 2642, providing that any taxes paid more than once or erroneously or illegally collected may be refunded by order

[2] Mining Company v. Juab County, 22 Utah, 395, 62 Pac. 1024.

40 Utah—36

of the board of county commissioners, refers to such taxes only which a county has no authority to collect, and in case of collection has no legal right to retain, and a payment of such taxes need not be made under protest to compel a refund. (Page 569.)

8. TAXATION—RECOVERY OF TAXES PAID—STATUTES. A taxpayer who pays taxes illegally collected within Comp. Laws 1907, sec. 2642, authorizing a refund of taxes illegally collected, must notify the board of county commissioners that the county receiving the taxes has no authority to collect them nor right to retain them, and must demand a refund thereof, and on such a demand the commissioners must adjust the matter and order a refund. (Page 569.)

9. TAXATION—RECOVERY OF TAXES PAID—ACTIONS. A taxpayer who pays illegal taxes may recover them, in an ordinary action for money had and received, from the officer to whom he has paid them, or, where such officer has paid them over to the county, then from the county. (Page 573.)

10. TAXATION—RECOVERY OF TAXES PAID—PLEADING. A complaint in an action against a county for taxes illegally collected which alleges that the taxes were levied on real estate mortgages, that the taxes were illegal, that they were paid to avoid a sale of the property, and that at various times plaintiff notified in writing the board of county commissioners that he had paid the taxes on real estate mortgages and demanded that they be refunded, and that the commissioners had refused to refund them, sufficiently alleges a demand for a refund within Comp. Laws 1907, sec. 2642, providing that any tax illegally collected may be refunded by order of the board of county commissioners, and action for money had and received lies to recover the taxes. (Page 574.)

11. PLEADING—DEMURRER—ADMISSIONS. A demurrer to a complaint admits the facts alleged therein. (Page 574.)    .

APPEALS from District Court, Seventh District, *Hon A. H. Christensen,* Judge.

Action by Clarence J. Neilson and another, against San Pete County.

Judgment of dismissal entered on sustaining a demurrer to the complaint. Plaintiffs appeal.

REVERSED AND REMANDED.

*Goodwin & Van Pelt* for appellant.

*Geo. Christensen* and *Ferdinand Ericksen* for respondent.

FRICK, C. J.

On the 12th day of May, 1911, appellants commenced this action in the district court of San Pete County, Utah, to recover certain taxes which it is alleged were illegal and void, and which were illegally collected by said county.

The material allegations contained in the complaint are substantially as follows:

That in the year 1907 the respondent county, without authority of law, made a pretended assessment and levy of taxes for state, county, and other purposes to the amount of $271.68 upon certain personal property owned by the appellants. That on the 3d day of September, 1907, respondent duly notified appellants that said taxes would become delinquent on November 15th following, and that, unless paid, certain costs and expenses would be added thereto for advertising and selling appellants' property to pay the same. That because of the notice aforesaid, and to prevent the sale of their property for the purpose stated, appellants, on the 22d day of October, 1907, paid said taxes to respondent, "but that said payment was not voluntarily made." That the assessment and levy aforesaid were made upon mortgages which were liens upon real property, and which mortgages were executed and delivered by various persons to appellants, and were their property. That said assessment and levy were illegal and void. That "on or about the 27th day of February, 1911, and at various times theretofore plaintiffs notified in writing the board of county commissioners of defendant San Pete County that they had paid said sum for the taxes aforesaid. That said taxes were on mortgages on real property and were illegal and void, and demanded that the said sum so paid by plaintiffs be refunded to plaintiffs, but that the same has not been refunded and said board of county commissioners has notified plaintiffs that they refuse to pay or refund the same."

There are two additional causes of action set forth in the complaint the allegations of which are the same as those we have just given, except that the taxes sought to be recovered in the other two causes were assessed, levied, and paid for the years 1908 and 1909 respectively. The amount paid for the year 1908 is stated to be $179.05 paid on the 12th day of November of that year, and for the following year the amount is stated to be $129.14 paid on the 17th day of November, 1909. Upon substantially the foregoing allegations appellants prayed judgment against respondent for the amounts paid for taxes and for legal interest and costs. Respondent interposed the following demurrer:

"(1) That neither the first, second, nor third causes of action state facts sufficient to constitute a cause of action; (2) that each of the three alleged causes of action . . . is barred by the provisions of sections 531 and 533 of the Compiled Laws of Utah of 1907."

The court sustained the demurrer, and, appellants having elected to stand on their complaint, the court rendered judgment dismissing the action, to reverse which this appeal is prosecuted.

The only errors assigned are that the court erred in sustaining the demurrer and in entering judgment dismissing the action. The questions presented for determination by this record, in view of our statutes and the somewhat conflicting decisions of the courts, are not free from difficulty nor from doubt. We shall first proceed to examine the reasons for which the court sustained the demurrer, and which counsel for respondent contend justify such a ruling.

It is contended that the complaint is insufficient because it is not alleged therein that a claim for the refund of the taxes was presented to and disallowed by the board of commissioners of the respondent county, and, further, because it is not alleged that the taxes in question were paid under legal compulsion, duress, or protest; and that it affirmatively appears from an inspection of the complaint that the claim was not presented in the manner nor within the time required by Comp. Laws 1907, sections 531, 533, and therefore, for that

reason, no recovery can be had in this action. Section 531, in substance, provides that the board of county commissioners shall neither hear nor consider, nor shall it credit or allow, any claim or bill against the county, unless the same be itemized "giving the names, dates and particular service rendered, nor until it has been passed upon by the county auditor. Every claim against the county must be presented to the auditor within a year after the last item of the account or claim accrued," and must be verified. Section 533 is to the effect that, if the claimant is dissatisfied with the action of the board in case his claim is disallowed in part or in whole, he "may sue the county therefor at any time within one year after the first rejection thereof by the board but not afterward." Subdivision 7 of section 511, in which the powers of the board of county commissioners with respect to the allowance of claims filed against the county are stated, provides that the board has power "to settle and allow all accounts legally chargeable against the county after the examination of the same by the auditor, and order warrants to be drawn on the county treasurer therefor." There are some other constitutional and statutory provisions which must be considered in connection with the foregoing, and which, in our judgment, are decisive of the questions raised by the demurrer. Prior to the year 1906 the legislature was, by our Constitution, authorized to provide for the taxation of mortgages. In that year the Constitution was amended so as to eliminate mortgages, and since then mortgages have been exempt from and have not been assessed for taxation. Appellants assert that by reason of the foregoing amendment of the Constitution the mortgages referred to in the complaint were exempt from taxation, and that the tax in question here therefore is illegal and void. They also contend that the right to sustain this action is given by Comp. Laws 1907, section 2642, which reads as follows:

"Any taxes, interest, and costs paid more than once, or erroneously or illegally collected may by order of the board of county commissioners be refunded by the county treasurer, and the portion of such taxes, interest, and costs, of the state,

cities, and school districts, must be refunded to the county, and the proper officer must draw his warrant therefor in favor of the county."

Section 2684, which has some bearing upon the force and effect that should be given to section 2642, *supra,* and the other statutory provisions to which reference has been made, reads as follows:

"In all cases of levy of taxes, licenses, or other demands for public revenue which is deemed unlawful by the party whose property is thus taxed, or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representatives may bring an action in any court of competent jurisdiction against the officer to whom said tax or license was paid, or against the county or municipality on whose behalf the same was collected, to recover said tax or license or any part thereof paid under protest."

Referring again to the provisions contained in sections 531 and 533 to which we have already referred, we are of the opinion that a claim for a refund of taxes like the one in question here was not intended to be and is not governed by the provisions of either of those sections. Neither is the claim for such refund an account which the board of county commissioners is authorized to settle and allow under the purview of subdivision 7 of section 511, to which we have also made reference. Furthermore, we think that this court is already committed to such a doctrine. In the case of *Mining Co. v. Juab County,* 22 Utah, 403, 62 Pac. 1025, in passing upon the question of whether a claim for the refund of taxes had to be presented to the board of county commissioners as a condition precedent to the right of bringing an action against the county where the taxes were paid under protest as provided in section 2684, *supra,* Mr. Justice Baskin said:

"Under the provisions of said section at the moment the plaintiff paid the unlawful tax, under protest, he thereupon acquired a right to institute suit against the defendant and was not required, as claimed by defendant's counsel, to first present a claim to the county court (board), or take any other steps as a condition precedent to bringing his action."

With regard to whether the action was barred because not commenced within the time specified in section 533, *supra*, it is also held in that case that the action was not barred by that section. In that regard it is held that the general four years' statute of limitations applies to such a claim, and that a claimant may bring an action at any time within four years after the date of payment of the taxes which he seeks to have refunded. In the cases cited below statutes similar to sections 531 and 533 were under consideration, and it is there held that a claim for the refund of an illegal tax is not an account or bill against a county which comes within the purview of said sections, and hence such a claim need not be presented for allowance before an action can be maintained against the county to recover taxes illegally collected. *Brady v. Supervisors*, 2 Sandf. (N. Y.) 460, affirmed by the New York Court of Appeals in 10 N. Y. 260; *Stringham v. Supervisors*, 24 Wis. 594; *Kellogg v. Supervisors*, 42 Wis. 97; *Commissioners v. Young*, 18 Kan. 440.

It is conceded, however, that Mr. Justice Baskin, as well as the justices who wrote the opinions in the foregoing cases, had reference to the recovery of illegal taxes that were paid under protest as provided by section 2684, supra. If the taxes in question had, therefore, been paid under protest, the cases to which we have referred would be decisive of the question contrary to the contentions of respondent's counsel, and the judgment would have to be reversed. While it is alleged in the complaint that the taxes in question were "not voluntarily" paid, yet it is clear from all the facts alleged that they were not paid under protest as provided by section 2684. In this connection counsel for respondent insist that the complaint is based upon the theory

.of a demand under protest because it is alleged that the payment was not voluntary, and, since this is so, appellants cannot have recourse to section 2642, *supra,* but must stand or fall by the provisions of section 2684, which provides for a refund of taxes only when paid under protest.

Counsel cite some cases decided by this court in which it is held that an appellant ordinarily may not on appeal depart from the theory upon which he tried his case in the court below, and they contend that this case comes within the rule laid down in those cases for the reason above stated. In our judgment, the rule stated by counsel has no application to the record before us. The only question before us is whether the appellants in their complaint state sufficient facts to entitle them either to the relief prayed for or to an substantial relief. It is immaterial upon what theory the court below proceeded in passing upon the demurrer. The question is, Does the complaint state a cause of action under the laws of this state which relate to the subject of the action? The question, therefore, is not alone whether the action is sustainable under the provisions of section 2684, but it is also whether it may be sustained under the provisions of section 2642, the provisions of which relate to the refund of taxes which were illegally oobtained by the county.

The latter section must also be given force and effect, and, unless restricted by the provisions of some other statute upon the same subject, we must give the language there used its ordinary and usual meaning and effect.

Giving the language used in both of those sections its ordinary meaning, it is clear that the purpose of section 2684 is to give the taxpayer an opportunity to contest the right of the county to collect certain taxes, licenses, or demands for revenue, or any portion thereof, by paying the whole under protest, and then sue to recover all or any portion that he may be entitled to. It is also clear that the taxes, licenses, or demands referred to in that section are such as are "deemed unlawful" by the taxpayer before

payment is made. Such taxes, licenses, or demands may, however, not be deemed unlawful by the officers who are required to collect them, and hence the taxpayer is required to indicate to the officers what portion he deems unlawful, and thus pay such part under protest for the purpose of laying a foundation for an action to test their legality. Under such circumstances, it is but fair and just that the taxpayer be required to indicate what portion of the tax he will contest on the ground of illegality, so that the officers can govern themselves accordingly in making the proper apportionment of the taxes.

Section 2642, however, does not deal with any such taxes or demands. The taxes mentioned in that section are such only which it is clear the county had no authority to collect, and, in case they are collected, has no legal right to retain them. Moreover, it is obvious that in adopting section 2642 it was not contemplated that the taxpayer need or should protest the payment thereof. Will any reasonable man contend that any one would knowingly pay taxes twice, or that he could pay the same erroneously and be cognizant of the fact at the time of payment? Again, under our system of collecting taxes, a tax could be "illegally collected" by selling property without the owner's knowledge or consent. It is therefore easy to perceive why payment under protest is required for taxes specified under section 2684, and why none is required for those mentioned in section 2642. But it is urged that the claim should be filed against the county, and that this should be done as a condition precedent to the right to maintain an action.

No doubt the taxpayer must, in some form, notify the board of county commissioners that the county had no authority to collect the tax in question, and that it has no right to retain the same, and hence he demands or requests that the tax be refunded to him. Upon such a demand or request, the county commissioners are as well prepared to look into the matter as they would be by the filing of a most formal claim against the county. Whether a tax has been twice paid or erroneously or illegally collected usually

is, and always should be, a matter of record in the county treasurer's office if he has complied with the law. Whenever a tax is paid, the treasurer is required to make a record of the transaction in a book kept for that purpose and is also required to issue an official receipt, and thus the tax may be identified and the amount thereof be ascertained both by the record and from the receipt. The board of county commissioners may thus readily adjust the matter and order the treasurer to refund the tax thus illegally or erroneously collected or paid. This the board may do without requiring the taxpayer to resort to an action, as is the case under section 2684. Under that section, the illegality of the tax must first be established in a court of competent jurisdiction before it can be refunded, while under section 2642 the illegality of the tax is absolutely assumed. Should the county commissioners, however, refuse to refund a tax that has been twice paid or erroneously or illegally collected by the county, would it not be a travesty of justice to say that the taxpayer is given the right to sue the county in case he merely "deems" the tax unlawful, but that he may not do so in a case where the tax is clearly unlawful, and is admitted to be so by the demurrer? In other words, that he may sue in case his right to a refund is doubtful; but may not do so when it is absolutely certain, simply because the county commissioners refuse to refund the tax? In the case at bar it is confessed by the demurrer that the tax in question was at least erorneously collected, since it is admitted that the tax was assessed and levied without authority of law. We confess our inability to understand why a court should be given power to grant relief under section 2684, but should be powerless to do so under section 2642 without first filing a formal claim under oath against the county. Nor can we see why more than a mere demand to refund is necessary in order to protect the county. More is certainly not required by section 2642 either expressly or by implication. And why should the courts impose conditions that are wholly unnecessary and where the statute does not require them? From a reading of the cases it seems that the courts sometimes re-

quire more from the taxpayer than is required by the statute. Such holdings, however, result from the fact that the courts seemingly are too much impressed with the common-law rule under which taxes when paid could not be recovered back unless paid under what amounted to duress or legal compulsion. *Shane v. City of St. Paul,* 26 Minn. 543, 6 N. W. 349, *Detroit v. Martin,* 34 Mich. 170, 22 Am. Rep. 512, and *City of Clarksville v. Montgomery County* (Tenn. Ch.), 62 S. W. 33, cited by counsel for respondent, are all cases that are based upon and illustrate the rule prevailing at common law. The common law was, however, found to be unnecessarily harsh, and the reasons upon which it was based fallacious, and in many cases most unjust. For these reasons statutes have been adopted in many states of the Union the provisions of which are similar to sections 2642 and 2684, *supra.* The State of New York has had in force such a statute for many years, and it has been held by the courts of that state that taxes erroneously or illegally collected may be recovered back under a statute like section 2642, although voluntarily paid. In the case of *Newman v. Supervisors,* 45 N. Y. 676, the law in a case where the officers imposed a tax without any authority of law therefor is stated in the headnotes as follows:

"If such illegal tax is collected and paid into the treasury of a county, an action as for money had and received will lie against the county for its recovery. The money having come to the treasury of the county by the wrongful act and with the knowledge of its officers, no demand is necessary before suit, nor is it necessary to present the claim therefor to the board of supervisors for audit and allowance."

During the course of the opinion delivered by Mr. Justice Folger, it is said:

"The facts in this case show that the County of Livingston, through the wrong act of the supervisors of the Town of Lima, and of the board of supervisors of the county, has, by its county treasurer, had and received into its treasury, and has paid out therefrom, for its own use, the money of the plaintiff, to which it was not entitled. The receipt of that money by the treasurer was a

receipt of it by the county. It has received that money by acts which were void for want of official power and jurisdiction to do them. The money *ex aequo et bono* belonged to the plaintiff; and in such case, whether it is withheld by a natural or artificial person, an action will lie to recover it, where such person is capable of suing and being sued."

In that case the tax in question was by the officers added to other taxes, and was imposed upon the owner's land without any authority of law. The tax was therefore wrongfully and unlawfully imposed. In the case at bar the property was no doubt regularly assessed and the taxes in question were levied, but without authority of law to assess or to levy them upon the mortgages. While the acts of the officers in this case may perhaps not have been wrongful in the sense that they were deemed to be so in the New York case, yet the officers' acts in the case at bar were as clearly without authority to make the assessments of the property in question as were the acts of the officers in the New York case in imposing the tax there in question. Nor has respondent any more right to the money, either in morals or in law, than had Livingston County in the New York case.

But we need not go, nor do we go, to the extent of holding in this case that taxes coming within the purview of section 2642 may be recovered back without first making a demand therefor upon the county commissioners. We think that the statute implies such a demand from the fact that it authorizes the board of commissioners to order the refunding of the taxes. But we think that it is likewise implied that the statute does not require more than a demand after payment, since it is there clearly implied that the order to refund may be made after the taxes have been apportioned among the several departments of state entitled thereto, and hence provides that such departments must, in turn, refund to the county their proportion. It is clearly contemplated, therefore, that no protest is necessary, since it is assumed that the refund is not ordered until after apportionment has been made.

The old spirit of the common law however no longer prevails in many of the states. This is made clear from what is said in 37 Cyc. 1172, where the law prevailing in many of the jurisdictions with respect to the right to recover back taxes voluntarily paid, but illegally or erroneously collected, is stated in the following language:

"Where a statute providing for the refund of excessive or erroneous taxes paid is general in its terms, it applies to voluntary as well as to involuntary payments."

The foregoing text is supported by the Supreme Court of Iowa in *Slimmer v. Chickasaw County,* 140 Iowa, 448, 118 N. W. 779, 17 Ann. Cas. 1028. It is also supported in the case of *People v. Board of Education,* 126 App. **9** Div. 414, 110 N. Y. Supp. 773, which case is affirmed by the New York Court of Appeals in 193 N. Y. 601, 86 N. E. 1130; and also in the case of *Board, etc., v. Armstrong,* 91 Ind. 528. In the case of *Tuttle v. Everett,* 51 Miss. 27, 24 Am. Rep. 622, it is held by the Supreme Court of Mississippi that taxes assessed without authority of law are absolutely void and that, therefore, the doctrine of voluntary payment does not apply. It is accordingly held that in case taxes are illegal and have been paid the taxpayer may recover them back from the officer to whom he has paid them, and, if such officer has paid them over to the county, then from the county, and that this may be done in an ordinary action as for money had and received. It should also be stated that the Supreme Court of California in *Younger v. Board of Supervisors,* 68 Cal. 241, 9 Pac. 103, has held that under a statute somewhat similar in terms to section 2642 a tax illegally collected cannot be recovered back unless it was paid under protest or legal duress. No cases are cited, and it seems the court had in mind only the common law rule, and thus gave little, if any, effect to the statute.

We are of the opinion, therefore, that where a refund of taxes paid is sought which comes within the purview of section 2642—that is, taxes to which the county has no right whatever because they were already paid, or because they

should not have been collected, or because absolutely illegal and void for other reasons—no formal or verified claim therefor need be filed with the board of county commissioners, but a demand in writing for the return thereof is all that is necessary, and such demand is sufficient if it identifies the taxes asked to be refunded and the amount thereof. We are also of the opinion that in case the board of county commissioners, upon demand therefor, refuses to order a refund, the taxpayer may bring an action to recover the tax, and may recover legal interest from the date of the demand. Whether under section 2642 the action must be commenced within four years from the date the tax is paid or within four years from the date of the demand we do not decide, because this question is not raised nor necessary to the decision of this case.

In this case the demand as alleged is sufficient, and, under the facts alleged in the complaint, which are admitted by the demurrer, the taxes in question are clearly illegal and void, and appellants are therefore entitled to recover the several amounts claimed by them in their complaint.

The judgment is reversed, and the cause remanded to the district court of San Pete County, with direction to overrule the demurrer and to permit the respondent to answer the complaint if it is so advised, and, if it neglects or refuses to answer within the time fixed by the court, the court is directed to enter judgment for appellants as prayed for in the complaint; and, in case respondent answers the complaint and presents a defense to the action, the court is directed to proceed to hear the case, and to determine the same in accordance with the views herein expressed. Appellants to recover costs.

McCARTY and STRAUP, JJ., concur.