## WILSON v. WEBER COUNTY

No. 6195.   Decided March 13, 1941.   (111 P. 2d 147.)

142

*John A. Hendricks* and *Glenn W. Adams*, both of Ogden, for appellant.

*Thatcher & Young*, of Ogden, for respondent.

PRATT, Justice.

E. S. Wilson is the assignee of three separate claims against Weber County, one each from the estates of Maule, Scowcroft and Stevens. The claims are for the refund of excessive inventory filing fees paid to the clerk of the county under and pursuant to section 28-2-2, R. S. U. 1933. Each estate paid a sum of money, based upon the estate valuation, and in excess of $10, the minimum fee required. We held in the case of *Smith* v. *Carbon County*, 90 Utah 560, 63 P. 2d 259, 108 A. L. R. 513, also Id., 95 Utah 340, 81 P. 2d 370, that the requirements of that section, in excess of the $10, were unconstitutional and void.

Mr. Wilson filed his complaint against Weber County on April 4, 1939. It is in three causes af action, one for each claim in the order they are set out above. The filing fees were not paid under protest—at least there is no allegation of payment under protest; and the payments were made on the following dates: Maule estate, July 1, 1935; Scowcroft estate, August 27, 1931; and Stevens estate, April 4, 1933. The appeal comes to us upon rulings upon the pleadings and arises in this way: Weber County filed a general demurrer to each cause of action, and also demurrer to each upon the grounds of the bar of the statute of limitations. The lower court overruled each general demurrer, and overruled the demurrer upon the statute of limitations as to the first cause of action (the Maule estate) but sustained that demurrer to the second two causes. Weber County did not answer the first cause of action so the case ended with a

default judgment against the county on that cause, and a dismissal of the other two causes of action. Weber County appeals from the lower court's overruling of the general demurrer to that first cause of action and the default judgment; and Mr. Wilson cross-appeals from the sustaining of the demurrer upon the statute of limitations to the second two causes of action, and of course their dismissal upon that ground. In each cause of action there is an allegation of a demand for the refund of the excessive payment. In the Maule estate that demand was made September 1, 1938; in the Scowcroft estate, it was made September 1, 1938; and in the Stevens estate, March 6, 1939.

The issues upon this appeal are these: (1) Weber County contends that the first cause of action is defective in that there is no allegation of payment of the excess fee under protest as required by Sec. 80-11-11, R. S. U. 1933; (2) that it is defective in that there is no allegation that a claim was filed with the county within a year of the payment as required by Sec. 19-11-10, R. S. U. 1933; (3) Mr. Wilson contends that the statute of limitations begins to run against the claim only after demand has been made for the refund, which demands must be made within a reasonable time after payment; (4) and that a reasonable time is the period of the statute of limitation, which in this case is four years —Sec. 104-2-30, R. S. U. 1933—after which he would have four years in which to file action. This contention, if correct, would bring all causes of action within time.

Sec. 80-11-11, R. S. U. 1933, is part of our revenue and taxation laws, and reads:

"In all cases of levy of taxes, licenses, or other demands for public revenue which is deemed unlawful by the party whose property is thus taxed, or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action in any court of competent jurisdiction against the officer to whom said tax or license was paid, or against the state, county, municipality or other taxing

unit on whose behalf the same was collected, to recover said tax or license or any portion thereof paid under protest."

It seems to be the generally accepted doctrine that, although fees are designated "fees" in the statutes similar to ours, where the amount of the fee is governed by the valuation of the estate, they are in reality taxes. *Cook County* v. *Fairbank et al.*, 222 Ill. 578, 78 N. E. 895; *Chapman* v. *Ada County*, 48 Idaho 632, 284 P. 259. We seem to have taken that view in the Smith v. Carbon County case cited above. That being the case, the provisions for the collection or refund of illegal taxes, found in our revenue and taxation laws, are applicable.

In addition to Sec. 80-11-11, R. S. U. 1933, quoted above, we have Sec. 80-10-17, R. S. U. 1933, which reads as follows.

"The board of county commissioners, upon sufficient evidence being produced that property has been erroneously or illegally assessed, may order the county treasurer to allow the taxes on that part of the property erroneously or illegally assessed to be deducted before payment of taxes. Any taxes, interest and costs paid more than once, or erroneously or illegally collected, may, by order of the board of county commissioners, be refunded by the county treasurer, and the portion of such taxes, interest and costs, paid to the state or any taxing unit, must be refunded to the county, and the proper officer must draw his warrant therefor in favor of the county."

The application of these two sections has been explained in the case of *Neilson* v. *San Pete County*, 40 Utah 560, 123 P. 334. Therein we said that Sec. 80-11-11, R. S. U. 1933 (then section 2684, Laws of Utah 1907), requiring a payment under protest, is applicable if the validity of the particular statute in question is yet to be determined. The payment under protest is required to lay a foundation for the attack upon the statute that requires the payment. Sec. 80-10-17, R. S. U. 1933 (then Section 2642, Laws of Utah 1907), is applicable to the case when the validity of the statute requiring payment is not

in question, but is assumed to be invalid. In other words, the illegality of the payment is unquestioned.

In the present case, paragraph 4 of the cause of action reads:

"4. The said sum so paid to and collected by the County Clerk of the defendant county as a fee for services is in fact and law not a fee for the performance of services, but an Ad Valorem tax attempted to be levied upon the property of the estate of said decedent, and the statute pursuant to which the same was collected by the clerk, to wit, Section 28-2-2, Revised Statutes of Utah 1933, is invalid and unconstitutional to the extent it requires payment of any fee or tax in an amount exceeding Ten Dollars ($10.00) upon the filing of the inventory and appraisement, for the services of the clerk or otherwise in said probate proceeding, because the same is in conflict with Article 13, Sections 2, 3 and 5, and Article 1, Section 24 of the Constitution of the State of Utah."

The substance of this allegation has been judicially determined to be as alleged—in the Smith v. Carbon County case, supra. Thus, this is not a case that falls under Sec. 80-11-11, R. S. U. 1933. It is true, that at the time the payment was made, the Smith v. Carbon County case had not been decided, but, the invalidity of the part of the statute requiring the fee based upon the estate valuation does not date merely from the date of the decision. When determined invalid, it is invalid from its inception. Thus a payment under and pursuant to its terms is an illegal payment, the illegality of which is unquestioned; and may be recovered even though not paid under protest, as stated in Neilson v. San Pete County case. An allegation of payment under protest is not necessary under the circumstances.

As to an allegation of the filing of a claim with the county as required by Sec. 19-11-10, R. S. U. 1933, we again invite attention to the Neilson v. San Pete case, supra, which disposes of that adversely to the county's contention. We shall not repeat the reasoning here.

The payment was an involuntary payment. Upon this point we invite attention not only to the Neilson case, but

also the case of Cook County v. Fairbank, supra, Sec. 181, 21 R. C. L. 157, and *Trower* v. *City and County of San Francisco*, 152 Cal. 479, 92 P. 1025, 15 L. R. A., N. S., 183, and note.

We are of the opinion that the lower court was right in overruling the general demurrer to the first cause of action.

In his attack upon the lower court's application of the bar of the statute of limitations to the second and third causes of action, Mr. Wilson relies considerably upon the law set out in the annotation in 32 L. R. A., N. S., 486 et seq. There is, however, a distinction between many of the cases therein cited and the present case. That distinction lies in the fact that in those cases, the retention of the money or the status of the obligor is not wrongful until the obligee has made his demand. Many of them are cases of contractual relationships that contemplate a demand to mature the obligation to act upon the part of one of the parties. In the present case, however, the obligation to return the money arises out of the fact that it was collected under a statute which has been declared void—its illegality is not contingent upon a demand. Assuming the involuntary character of the payment—and we held above that it was involuntary—there is no necessity for further action by the taxpayer to make the acquisition and retention of the money by the county wrongful.

It is true that a demand or notice to a municipal corporation is frequently required before suit upon a claim; but the principal object of such a requirement is to afford that governmental body the opportunity of settling without suit. The test is whether the performance of the condition (the demand or notice) is a part of the cause of action or merely a step in the remedy. If the latter, the statute does not start to run upon the demand or notice; if the former, it starts to run upon that demand or notice. 37 C. J. 955, § 326, and cases in note 53.

In the case of Neilson v. San Pete County, this court held that it was a sufficient demand if it simply identified the taxes and the amount thereof—simply a notice to make the county aware of the money illegally collected by it, and to afford the county the opportunity to refund under and pursuant to Sec. 80-10-17, R. S. U. 1933. If the county may refund taxes illegally collected, then what is the necessity for compelling the taxpayer to demand the return of those taxes upon the assumption that there is no obligation to return them until such a demand is made. In a case such as the present one we must keep in mind the very important facts that the illegality of the collection has been determined, it is an involuntary payment, the amount is liquidated, and is capable of exact proof from the records—all elements of a good cause why the money should not be retained by the county. A demand neither weakens nor strengthens the cause. Under the circumstances the most that can be said for the demand or notice is that it is part of the remedy and not part of the cause of action and it must be made or given, and the action must be filed, both within the statutory period from the date of payment.

We are of the opinion that the lower court's ruling upon the demurrers based upon the statute of limitations was correct.

The judgment of the lower court is affirmed.

Costs to respondent.

MOFFAT, C. J., and LARSON, J., concur.

WOLFE, Justice (concurring in part, dissenting in part).

I dissent from the conclusion that the demurrer to the first cause of action was properly overruled. I think an allegation that the money had been paid under protest was a necessary ingredient of the cause of action. The opinion seems not to have sensed the real distinction made by

*Neilson* v. *San Pete County,* 40 Utah 560, 123 P. 334, 337, between Secs. 80-11-11, R. S. U. 1933 (then sec. 2684, C. L. U. 1907) and 80-10-17, R. S. U. 1933 (section 2642, C. L. U. 1907). Sec. 80-10-17 deals with a situation where there is no color of warrant for the assessment—a failure to follow law resulting in an erroneous or double assessment where even by any purported law, no tax as paid was due. Sec. 80-11-11, on the other hand, deals with a situation where what at least purports to be law *commands* the officer to collect a tax or license fee. If the statute is invalid of course he has acted without warrant of law but not without color of warrant. The purpose of Sec. 80-11-11, is clear. It puts the officer on notice that his collection *under the law as it purports to be* will be questioned. He may then protect himself and the governmental unit he represents by earmarking the collection. The statute, it is said, was void at its inception, hence it is as if Sec. 80-10-17 applied and all taxes or license fees collected by the county may within four years of payment be recovered against the county even though the county had no opportunity to protect itself by segregating the funds collected. It was innocent of the invalidity of the statute and was doing its duty under the law as it thought it to be. Certainly a payment under protest is of the very essence and is a condition of recovery under such circumstances. It is an element in the cause of action. We concede for the purposes of this argument that Neilson v. San Pete County, supra, was correct in deciding that a statute which reads "may by order of the board of county commissioners be refunded by the county treasurer" means "must" be refunded and if not refunded can be collected by suit. Whether such construction was correct we need not discuss. But the Neilson case did not hold that taxes collected illegally but by color of warrant of law could be recovered by suit under Sec. 80-10-17. Its language seems to import just the opposite— viewed in light of the facts. Mortgages were entirely exempt from taxation by an amendment to the Constitution.

The tax assessed and collected on them was, therefore, not only unwarranted and illegal but without color of warrant. There was in effect a prohibition against their taxation and not a command having color of law, however illegal, to assess a tax thereon. The court there says:

"Giving the language used in both of those sections [the present 80-10-17 and 80-11-11] its ordinary meaning, it is clear that the purpose of section 2684 [Sec. 80-11-11] is to give the taxpayer an opportunity to contest the right of the county to collect certain taxes, licenses, or demands for revenue, or any portion thereof, by paying the whole under protest, and then sue to recover all or any portion that he may be entitled to. It is also clear that the taxes, licenses, or demands referred to in that section are such as are 'deemed unlawful' by the taxpayer before payment is made. Such taxes, licenses, or demands may, however, not be deemed unlawful by the officers who are required to collect them, and hence the taxpayer is required to indicate to the officers what portion he deems unlawful, and thus pay such part under protest for the purpose of laying a foundation for an action to test their legality. Under such circumstances, it is but fair and just that the taxpayer be required to indicate what portion of the tax he will contest on the ground of illegality, so that the officers can govern themselves accordingly in making the proper apportionment of the taxes.

"Section 2642, however, does not deal with any such taxes or demands. The taxes mentioned in that section are such only which it is *clear the county had no authority to collect, and, in case they are collected, has no legal right to retain them.* Moreover, it is obvious that in adopting section 2642 [Sec. 80-10-17] it was not contemplated that the taxpayer need or should contest the payment thereof. Will any reasonable man contend that any one would knowingly pay taxes twice, or that he could pay the same erroneously and be cognizant of the fact at the time of payment? Again, under our system of collecting taxes, a tax could be 'illegally collected' by selling property without the owner's knowledge or consent. *It is therefore easy to perceive why payment under protest is required for taxes specified under section 2684, and why none is required for those mentioned in section 2642.*" (Italics added.)

This language seems clearly to indicate that only taxes collected without color of warrant by entirely extra-legal action, in contradistinction to those collected by color of warrant which by apparent law the officer was required to

collect, are covered by Sec. 80-10-17. Therefore, the language of the opinion stating:

"Thus, this is not a case that falls under Sec. 80-11-11, R. S. U. 1933. It is true, that at the time the payment was made, the Smith v. Carbon County case had not been decided, but, the invalidity of the part of the statute requiring the fee based upon the estate valuation does not date merely from the date of the decision. When determined invalid, it is invalid from its inception. Thus a payment under and pursuant to its terms is an illegal payment, the illegality of which is unquestioned; *and may be recovered even though not paid under protest, as stated in the Neilson v. San Pete County case.* An allegation of payment under protest is not necessary under the circumstances." (Italics added.)

seems not only to fail to make the distinction set out in the Neilson case, but to obliterate it entirely.

Again in the Neilson case it is said:

"The board of county commissioners may thus readily adjust the matter and order the treasurer to refund the tax illegally or erroneously collected or paid. This the board may do without requiring the taxpayer to resort to an action, as is the case under section 2684. Under that section, the illegality of the tax must first be established in a court of competent jurisdiction before it can be refunded, while under section 2642 the illegality of the tax is *absolutely assumed.*" (Italics added.)

Here the distinction between tax collected without color of warrant and one collected with apparent authority is again made. Under Sec. 2684, C. L. U. 1907 (Sec. 80-11-11, R. S. U. 1933) the "illegality of the tax must first be established in a court of competent jurisdiction." Why? Because there is apparent authority. Something in the nature of a law exists which commands the collection. The officer cannot refuse to collect except at his peril if the law should prove constitutional. It is not the case "under section 2642" where "the illegality of the tax is absolutely assumed."

Again the distinction:

"* * * would it not be a travesty of justice to say that the taxpayer is given the right to sue the county in case he merely

'deems' the tax unlawful, but that he may not do so in a case where the tax is clearly unlawful, and is admitted to be so by the demurrer?"

It was on this basis that the court construed the word "may" to mean "must." And again revealing that the mind of the court caught the distinction between moneys collected under color of warrant and without such apparent authority, the court says:

"In the case at bar it is confessed by the demurrer that the tax in question was at least erroneously collected, since it is admitted that the tax was assessed and levied without authority of law."

The language of the court that the demurrer admits that the tax has been erroneously collected shows it to be a case where the illegal or erroneous collection depended on a question of fact and not on an interpretation of law or the constitutionality of a statute, for certainly on a suit brought in pursuance of a protest to have declared invalid a tax statute, the very way to raise the law issue would be by demurrer. Such demurrer would not admit that the tax had been "erroneously collected" or there could be no issue of law.

Any other conclusion would work an unbalance. As to the county an action could be brought to recover moneys collected under a null law without founding it on a protest, but as to moneys collected under an apparent legal authority by representatives of other governmental units there could be no recovery except under Sec. 80-11-11, which requires a previous payment under protest.

If we permit our minds to range over the whole matter of exactions we can readily see how Secs. 80-11-11 and 80-10-17 fit together. The latter section deals with ad valorem property taxes. It is in the chapter dealing with the "collection" of such taxes—Chap. 10 of Title 80. These taxes are collected year after year by the county officers for all governmental units for whose benefits they are levied. If a tax was collected twice or without any apparent legal warrant there was no reason why on request and

inspection they should not be ordered paid back from the fund in the hands of the county derived from the ordinary property taxes, and such repayment charged against each unit's share in subsequent years if the erroneously collected taxes had been distributed. And, therefore, this was a duty specially placed on the county and no other unit because the county, as collection agent, had custody of the funds year after year. But for some special tax or fee collected under color of warrant of law Sec. 80-11-11 must apply. Here, unless paid under protest, the county nor any other unit for that matter, would be put on notice that there would be any demand for repayment. As a consequence the county or such other unit collecting, as seemingly by law required to do, might—indeed would—expend the funds for the purposes to which the law designated them. Within four years of any payment if the law was finally declared invalid, hundreds of payers under the prevailing opinion might sue the county for payments far beyond any power to repay. It might require a levy up to the limit in order to repay exactions under a law subsequently declared illegal. No such result was contemplated. What was contemplated was that here and there a double or erroneous or utterly unwarranted collection of an ad valorem tax would be made, and that without materially disturbing the revenue for governmental purposes it could in equity be repaid.

In consequence of what is above said, I must dissent from the ruling which affirms the overruling of the demurrer to the first cause of action.

I agree that a claim for a repayment of the tax as meant by Sec. 19-11-10, R. S. U. 1933, is not necessary to a recovery under Sec. 80-11-11 because such claim is already bottomed on a demand in the form of a protest. I further agree that under the Neilson case it is not necessary to make the formal claim for erroneously collected taxes recoverable under Sec. 80-11-11. As suggested by the opinion there is a great deal of difference between a demand neces-

sary to mature an action or make it "accrue,"—*State Tax Commission* v. *Spanish Fork,* 99 Utah 177, 100 P. 2d 575, 131 A. L. R. 816—and one for courtesy merely. Failure to give the latter would not affect the cause of action as it itself is a demand and the party sued could save further costs by settlement. Hence I agree that the statute of limitations runs in this case from the time of payment of the exaction, and that in any case, causes two and three were barred.

McDONOUGH, Justice.

I concur in the views expressed by Mr. Justice WOLFE in his opinion.