## STATE v. DISTRICT COURT OF SALT LAKE COUNTY et al.

No. 6350.  Decided August 12, 1941.  (115 P. 2d 913.)

See 50 C. J. Prohibition, sec. 31; 25 R. C. L., 417.

For opinion on rehearing, see 102 Utah 290, 128 P. 2d 471.

*Grover A. Giles,* Atty. Gen., *H. D. Huffaker,* Asst. Atty. Gen., and *Calvin I. Rampton,* Deputy Atty. Gen., for plaintiff.

*Louis H. Callister* and *Ned Warnock,* both of Salt Lake City, for defendants.

WOLFE, Justice.

This is an original action before this court on petition of the State of Utah for a writ of prohibition to enjoin the Third Judicial District Court from proceeding in the case of *Garrett Transfer & Storage Company, a corporation* v. *State of Utah,* now pending in said lower court. The case in the district court is to recover taxes paid under protest to the state under a statute which has since been declared unconstitutional. In that case summons was served upon the Governor and the Attorney General to effect service on the state. The question raised by the petition before us

is whether or not the district court acquired jurisdiction over the State of Utah as the defendant, by such service of summons.

We start with the assumption that the sovereign is immune from suit. To find authority for any action of whatever nature against the state, recourse must be had to the statutes. Such statutes must be construed so as to give effect to the intent of the Legislature. § 88-2-2, R. S. U. 1933. There must be substantial compliance with the designated statutory procedure, for bringing such actions. *Campbell Bldg. Co.* v. *State Road Commission,* 95 Utah 242, 70 P. 2d 857; *State* v. *District Court,* 94 Utah 384, 78 P. 2d 502; *Dougherty* v. *Vidal,* 37 N. M. 256, 21 P. 2d 90; *International Paper Co.* v. *Commonwealth,* 232 Mass. 7, 121 N. E. 510; *Bekins Van & Storage Co.* v. *State,* 135 Cal. App. 738, 28 P. 2d 61; *Brandt* v. *Riley,* 139 Cal. App. 250, 33 P. 2d 845; *Sweeney* v. *Dierstein,* 170 Okl. 566, 41 P. 2d 673.

By Section 80-11-11, R. S. U. 1933, it is evident that the State of Utah has consented to be sued for the recovery of a tax deemed unlawful by the party against whom the tax is enforced, if the tax is paid under protest. That section reads:

"In all cases of levy of taxes, licenses, or other demands for public revenue which is deemed unlawful by the party whose property is thus taxed, or from whom such tax or license is demanded or enforced, such party may pay under protest such tax or license, or any part thereof deemed unlawful, to the officers designated and authorized by law to collect the same; and thereupon the party so paying or his legal representative may bring an action in any court of competent jurisdiction against the officer to whom said tax or license was paid, or against the state, county, municipality or other taxing unit on whose behalf the same was collected, to recover said tax or license or any portion thereof paid under protest."

While removing the state's immunity from suit in the case of a claim for refund of taxes paid under protest, the foregoing statute does not expressly prescribe any procedure.

It is urged by defendants that in the absence of a statutory method of serving process on the state we should recognize resort to the common law procedure of serving summons on the chief executive and attorney general. In support of this contention the case of *Chisholm* v. *Georgia*, 2 Dall. 419, 1 L. Ed. 440, is cited. That case is not in point here. Furthermore, in recent cases doubt has been cast on the correctness of the decision in *Chisholm* v. *Georgia*, supra, in respect to the manner of service of summons which it recognizes as valid, as well as in respect to the principles therein involved. *State* v. *Bouchelle*, 119 W. Va. 154, 192 S. E. 169. See, also, opinion of Mr. Justice Potter in *Edward Thompson Co.* v. *Maynard*, 269 Mich. 97, 256 N. W. 817, decided by a divided court.

Generally, where the State of Utah has consented to suit against commissions, boards, or other bodies in the state government, it has outlined the procedure for service of process either specifically in the statutes granting the consent, or such procedure is provided generally in our code of civil procedure. At no time has the Legislature provided for service on the State of Utah through the Governor or Attorney General. Certainly nothing in our Constitution would lend itself to such interpretation. There is nothing that inheres in the office of either that would make them the representatives of the state for the purpose of serving process. *State* v. *Bouchelle*, supra.

From the foregoing it does not follow, however, that the above-quoted Section 80-11-11 has no application to actions for the refund of taxes paid to the state. An action against the tax collecting officers (or commission) is authorized and by reason of that section refuge cannot be taken in the the state's immunity from suit. As to the collecting officers (or commission), service of process is clearly possible under our civil code. That such was the intended procedure is clear by the enactment in 1927 of what is now Section 80-11-13, R. S. U. 1933, which reads:

"In case any tax or license shall be paid to the state under protest, said tax or license so paid shall not be covered into the general fund but shall be held and retained by the state treasurer and shall not be expended until the time for the filing of an action for the recovery of said tax or license shall have expired, and in case an action has been filed, until it shall have been finally determined that said tax or license was lawfully or was unlawfully collected. If in any such action it shall be finally determined that said tax or license was unlawfully collected, the officer collecting said tax or license shall forthwith approve a claim for the amount of said tax or license adjudged to have been unlawfully collected, together with costs and interest as provided by law, and any excess amount in excess of said tax required to pay said claim, including interest and costs, shall be repaid out of any unappropriated funds in the hands of the state treasurer, or, in case it is necessary, a deficit for said amount shall be authorized."

Significantly the last-quoted statute refers only to taxes paid to the state under protest. Its effect is to clarify further the position of the state with regard to actions to recover such taxes. So long as there is a cloud on the right of the state to use taxes, as a result of their having been paid under protest, the state treasurer is empowered and directed to withhold money so collected from the state funds. By this means the transfer of these funds to the revenue of the state on whose behalf they were collected is precluded until the merits of the protest shall have been determined. By this means also it is required that an established claim be approved by the collecting officer for the amount of the tax adjudged to have been unlawfully collected. Since the collecting officer (or commission as at present) must approve the claim when adjudged to be due the taxpayer, it is obvious that such funds can be reached only through an adjudication against the collecting agency.

That this decision has the effect of limiting actions for taxes paid to the state to the six-month period available under Section 104-2-27 R. S. U. 1933, in contrast to the longer period for actions against a county or municipality under the decisions of *Neilson* v. *San Pete County*, 40 Utah 560, 123 P. 334, and *Raleigh* v. *Salt Lake City*, 17 Utah 130, 53 P. 974, cannot alter the conclusion we here reach. Section

80-11-13, supra, was enacted subsequent to the decisions in both of those cases. In the Raleigh case, supra, the court explained the purpose of the six-month period as being to protect a de facto officer who was required to settle and pay money collected over to the taxing unit at frequent intervals. Under Section 80-11-13, supra, the state treasurer, at least, no longer needs the protection of a short period of limitation. Nevertheless, the Legislature did not see fit to extend the period of limitation, though directing the treasurer to withhold taxes so long as an action may be brought or is pending. The decision in the Raleigh case, by its reasoning, supports the result we here reach. In holding that a short period of limitation was then necessary to protect the collecting officer because he was required to pay money collected over to the taxing unit at frequent intervals, it is clear that the court construed Section 80-11-11 as contemplating that such actions would be brought against such officer until the funds were transferred to the taxing unit.

We conclude, that the Legislature intended to have all actions to recover taxes paid to the state limited to the six-month period by confining the procedure to obtain any refund to an action against the collecting officers. As a result an ascertainment of available state funds is greatly facilitated, and the element of certainty in state finance is materially promoted. That such a period, or even a shorter period, is entirely reasonable is well settled. *Weathers* v. *City of Laurens,* 187 S. C. 297, 197 S. E. 317; *Burrill* v. *Locomobile Co.,* 258 U. S. 34, 42 S. Ct. 256, 66 L. Ed. 450.

The statutes herein discussed are the only provisions governing the recovery of taxes paid to the state. So far as the state is concerned, there is no provision for the refund of taxes illegally or erroneously assessed or collected, such as Section 80-10-17, R. S. U. 1933, which is applicable only to taxes paid to counties, and which was construed in *Neilson* v. *San Pete County,* supra, and *Wilson* v. *Weber County,* 100 Utah 141, 111 P. 2d 147. It follows, therefore, that payment under protest is a condition precedent to the recovery of

taxes paid to the state. Actions to recover from the state must conform to the statutes governing taxes paid under protest as outlined herein.

The alternative writ of prohibition heretofore issued in this case is made permanent.

McDONOUGH, J., concurs.

LARSON, Justice (concurring in the result).

I concur in the order making the writ permanent. I do this solely upon the ground that the statute requiring that taxes collected by state officers or boards, and paid under protest, be not covered into the state funds, but are sequestered and retained by the Treasurer as separate moneys in his hands pending determination as to whether it belongs to the state or to the taxpayer. The state not having received the money is not subject to suit for repayment thereof. Such action must lie against the person who received or who has the possession and control of the property. Pending determination as to whom the money belongs, the state has no more claim to or control over the money than the taxpayer. The action therefore should lie against the party who has the money. Such party is not the state under the provisions of the statute.

MOFFAT, C. J., and PRATT, J., dissent.