*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 16**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JESSE and ALISON HAMMONS,
*Appellants,*

*v.*

WEBER COUNTY, WEBER COUNTY COMMISSION, JAN ZOGMAISTER,
KERRY GIBSON, and MATTHEW BELL,
*Appellees.*

No. 20151074
Filed May 2, 2018

On Direct Appeal

Second District, Ogden
The Honorable Michael D. DiReda
No. 140905091

Attorneys:

T.R. Morgan, Scott L. Hansen, Ogden, for appellants

Barton H. Kunz II, Salt Lake City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE, and JUDGE BATES joined.

Due to her retirement, JUSTICE DURHAM did not participate herein;
and DISTRICT COURT JUDGE MATTHEW BATES sat.

JUSTICE PETERSEN became a member of the Court on
November 17, 2017, after oral argument in this matter and
accordingly did not participate.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    The Property Tax Act[1] establishes a tax exemption for primary residential property.[2] In 2007 and 2008, Jesse and Alison Hammons paid taxes on their primary residence, but later learned that Weber County had not given them the residential exemption. In 2012, they asked the county to refund their taxes or to apply what they considered to be the overpayment as a credit against future taxes. The county denied their request. After the Weber County Tax Review Committee and the Weber County Commission also denied their claims, the Hammonses filed a notice of claim with the county and a complaint with the district court. They claimed that the county had violated Utah Code sections 59-2-103 and 59-2-103.5. These sections establish the residential exemption and set forth procedures to obtain the exemption. The district court entered a judgment on the pleadings, dismissing the Hammonses' causes of action.

¶2    The Property Tax Act affords taxpayers three avenues to challenge the assessment of their property taxes. Under Utah Code section 59-2-1004, a "taxpayer dissatisfied with the valuation or the equalization of the taxpayer's real property" may appeal to the board of equalization within a prescribed time period. Section 59-2-1327 provides that if a "person whose property is taxed claims the tax is unlawful, that person may pay the tax under protest to the county treasurer. The person may then bring an action in the district court against the officer or taxing entity to recover the tax or any portion of the tax paid under protest." And under section 59-2-1321, a taxpayer may argue "that property has been either erroneously or illegally assessed," and, after producing "sufficient evidence," may receive a refund or a credit towards future taxes.

---

[1] UTAH CODE §§ 59-2-101 to -1713.

[2] *Id.* § 59-2-103. "As a general rule, when adjudicating a dispute we apply the version of the statute that was in effect 'at the time of the events giving rise to [the] suit.'" *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 12, 227 P.3d 256 (alteration in original) (citation omitted). But because the differences between the 2007/2008 versions and the current version of the statutes are inconsequential in this case, we cite to the current version.

¶3 The Hammonses are not dissatisfied with the valuation or equalization of their property, and so their claims do not fall under section 1004. They did not pay the 2007 or 2008 taxes under protest, so their claims cannot fall under section 1327. So their challenges to the taxes they paid in 2007 and 2008 must fall under section 1321, which we have said requires taxpayers to point to an "error or illegality that is readily apparent from county records."[3] The Hammonses have not challenged this requirement, nor have they shown that the alleged errors or illegalities were readily apparent, so we affirm the judgment of the district court.

## Background

¶4 Jesse and Alison Hammons have a primary residence in Liberty, Utah. Although they have occupied the house since 2005, Weber County records listed a Clearfield post office box as the address for their property until 2008. The county gave the Hammonses the residential exemption on their property taxes in 2005 and 2006, but in 2007 the county assessor flagged the Hammonses' property as a possible non-primary residence, citing the fact that the Hammonses listed a post office box instead of a physical address. The assessor then sent the Hammonses a letter, requiring them to submit a signed statement of primary residence. The Hammonses did not receive the letter and did not submit the statement. The assessor reclassified the Hammonses' property as non-primary residential, which resulted in the Hammonses losing their primary residential tax exemption for the 2007 tax year.

¶5 The Hammonses paid the 2007 taxes, but later realized that their property had been reclassified and that they had not received the residential exemption. They contacted the county and were told that it required a change of address form to have their property's physical address listed on county records. They submitted the form in August 2008. They also asked for a refund of the taxes that had been paid due to the incorrect reclassification of their property, but were told that the time for appeal had passed.

¶6 Despite changing their address on county records, the Hammonses did not receive the primary residential exemption in 2008. They again paid taxes on the full value of their property, and

---

[3] *Woodbury Amsource, Inc. v. Salt Lake Cty.*, 2003 UT 28, ¶ 12, 73 P.3d 362.

they again realized they had done so after they had paid. They contacted the county and this time were told that they had to submit a signed statement of primary residence in order to have their property reclassified as primary residential and receive the exemption. The Hammonses completed the signed statement of primary residence on April 23, 2009. The county changed their property's tax exemption classification for the 2009 tax year.

¶7   In 2012, the Hammonses asked the county to refund the taxes they had overpaid in 2007 and 2008 or to apply their overpayment as a credit against current taxes. The county denied their request. The Hammonses appealed the county's denial to the Weber County Tax Review Committee and the Weber County Commission. During the appeal process, the Hammonses learned that at the time they were seeking to correct the classification of their property, the county did not have an ordinance in place requiring a signed statement of primary residence.

¶8   The Hammonses then filed a notice of claim with the county and a complaint in the district court claiming that the county had violated Utah Code sections 59-2-103 and 59-2-103.5 by denying them the primary residential exemption and failing to notify them of overpaid taxes. They also alleged fraudulent non-disclosure, fraudulent concealment, negligent misrepresentation, unjust enrichment, negligence, and fraud. The district court entered a judgment on the pleadings, dismissing the Hammonses' causes of action. They timely appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(b).

**Standard of Review**

¶9   "Because we are reviewing a grant of a motion for judgment on the pleadings, this court accepts the factual allegations in the complaint as true; we then consider such allegations and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff. We affirm the grant of such motion only if, as a matter of law, the plaintiff could not recover under the facts alleged."[4]

**Analysis**

¶10 The Hammonses raise three claims on appeal. They first argue that the district court erred when it concluded that the county

---

[4] *Healthcare Servs. Grp., Inc. v. Utah Dep't of Health*, 2002 UT 5, ¶ 3, 40 P.3d 591 (citation omitted) (internal quotation marks omitted).

assessor acted within the scope of his authority in reclassifying the Hammonses' property as "non-primary residential." Second, they argue that the district court erred in concluding that the county assessor could require a signed statement of primary residence as a condition of maintaining the residential exemption in 2008, before the county had passed an ordinance requiring such a statement. And third, they argue that they overpaid taxes in 2007 and 2008, that those taxes were erroneously and illegally assessed, and that they are therefore entitled to a refund or credit.

¶11 The Hammonses are somewhat limited in the claims they can bring by the Property Tax Act. The Act provides three avenues for challenging the assessment of property taxes: Utah Code sections 59-2-1004, 59-2-1327, and 59-2-1321. Section 1004 provides an avenue for a taxpayer dissatisfied with the valuation or equalization of their property. The Hammonses' claims clearly do not fall under section 1004. Section 1327 requires that the taxpayer first "pay the tax under protest" before bringing an action in district court claiming that the tax is unlawful. The Hammonses did not pay the 2007 or 2008 taxes under protest, so their claims cannot be brought under section 1327. Finally, section 1321 allows a taxpayer to argue "that property has been either erroneously or illegally assessed" and, after producing "sufficient evidence," may receive a refund or credit towards future taxes. Section 1321 is the only avenue available to the Hammonses, and they have tried to make their claims fit within its narrow parameters. But because the errors and illegalities they allege are not "readily apparent from county records"[5]—a standard the Hammonses do not challenge on appeal—their claims fail and we therefore affirm the judgment of the district court.

## I. The Hammonses' Claims Fail Under Section 1321

¶12 Utah Code section 59-2-1321 provides that

> The county legislative body, upon sufficient evidence being produced that property has been either erroneously or illegally assessed, may order the county treasurer to allow the taxes on that part of the property erroneously or illegally assessed to be deducted before payment of taxes. Any taxes, interest, and costs paid more than once, or erroneously or illegally collected,

---

[5] *Woodbury Amsource, Inc. v. Salt Lake Cty.*, 2003 UT 28, ¶ 12, 73 P.3d 362.

may, by order of the county legislative body, be refunded by the county treasurer . . . .

In *Woodbury Amsource, Inc. v. Salt Lake County*, we explained that states passed statutes like section 1321 to ameliorate the "unnecessarily harsh" common law rule that "taxes when paid could not be recovered back unless paid under what amounted to duress or legal compulsion."[6] In other words, "[a] taxpayer who paid a tax voluntarily . . . could not receive a refund of the tax under any circumstances, even when the taxing authorities had committed blatant error."[7] Section 1321 allows taxpayers, like the Hammonses, who pay taxes voluntarily to receive a refund or tax credit when they can show blatant error. And in contrast to section 1327, which requires a taxpayer to pay under protest before challenging an unlawful tax, section 1321 "allows a taxpayer to obtain a refund without having paid under protest and without going to court. '[T]he illegality of the tax is absolutely assumed,' and only if the county refuses to provide the refund must the taxpayer go to district court to appeal the decision."[8] But the scope of section 1321 "is relatively narrow."[9]

¶13 The taxes at issue in section 1321 are limited to those "which it is clear the county had no authority to collect, and, in case they are collected, has no legal right to retain them."[10] "Thus, in order for a taxpayer to receive a refund under section 59-2-1321, . . . the taxpayer must be able to point to a specific double payment, error or illegality that is readily apparent from county records."[11] In *Woodbury Amsource,* we explained that "readily apparent from county records" means that "the county treasurer has the information necessary to make the determination at hand" and "the county commissioners need only receive some form of notification from the taxpayer to be 'as well prepared to look into the matter as they would be by the

---

[6] 2003 UT 28, ¶ 9, 73 P.3d 362 (quoting *Neilson v. San Pete Cty.*, 123 P. 334, 338 (Utah 1912)).

[7] *Id.*

[8] *Id.* ¶ 11 (alteration in original) (quoting *Neilson*, 123 P. at 338).

[9] *Id.* ¶ 9.

[10] *Id.* ¶ 11 (quoting *Neilson*, 123 P. at 338).

[11] *Id.* ¶ 12.

filing of a more formal claim against the county' in court."[12] This is a "limited circumstance where a taxpayer can point to an error of fact or law in the collection of the tax, or a payment more than once."[13] It is not a situation where the taxpayer "disputes the legality of the tax and wishes to bring suit"—such disputes fall under section 1327 and require the taxpayer first pay the tax "under protest."[14]

¶14 In an attempt to fit their challenges under section 1321, the Hammonses contend that "the taxes collected in 2007 and 2008 were illegal and erroneous to the extent that taxes were overpaid because the residential exemption was illegally removed." They then attempt to point to "facts which are readily apparent on the county records"—specifically that "the county assessor reclassified the Hammons[es]' property without involvement of the board of equalization and required a signed statement of primary residence prior to the enactment of the ordinance required by Utah Code [section] 59-2-103.5." But they misunderstand section 1321's function.

¶15 As noted above, section 1321 applies only when the answer to a relevant legal dispute is clearly established in our law. Here, we have never stated that a county assessor cannot reclassify property without approval from the board of equalization, nor is Utah law clear on that point. And courts have never clearly held that a county cannot require a signed statement of primary residence without enactment of an ordinance. So, contrary to the Hammonses' contention, it is "not clear the county had no authority to collect" in

---

[12] *Id.* ¶ 11 (quoting *Neilson*, 123 P. at 338). The requirement that an error or illegality be "readily apparent from the county records," as articulated by the *Woodbury Amsourse* court, may establish a higher bar for taxpayers seeking relief under section 1321 than the statute itself sets. The plain language of Utah Code section 59-2-1321 does not require errors or illegalities be "readily apparent from county records." *See* UTAH CODE § 59-2-1321. Rather, it requires only that "sufficient evidence be[] produced" showing that the "property has been either erroneously or illegally assessed." *Id.* But because neither party has asked us to reexamine our precedent, we analyze this case under existing precedent.

[13] *Woodbury Amsource*, 2003 UT 28, ¶ 15.

[14] *Id.*

this case and, thus, the Hammonses cannot "point to an error of fact or law in the collection" of the tax.[15]

¶16  Furthermore, under *Woodbury Amsource*, their arguments are not facts—or errors—readily apparent from county records. Instead, the Hammonses have raised unanswered legal disputes. They point only to the fact that they listed "FALL 2005" as the date of occupancy on their signed statement of primary residence. This would not signal to the county treasurer or the county commissioners that the county assessor was without authority in reclassifying the Hammonses' property or that the County could not require a signed statement of primary residence. So what they are asking of us—to resolve whether the county assessor could reclassify residential property and whether the County could require a signed statement of primary residence before passing the necessary ordinance—exceeds the scope of section 1321.[16]

## Conclusion

¶17 The Hammonses' challenge to their 2007 and 2008 taxes must fall under section 1321. As we stated in *Woodbury Amsource*, taxpayers bringing section 1321 claims must be able to point to a clearly-established error or illegality, and one that is readily apparent from county records. The Hammonses cannot do this, so we affirm the judgment of the district court.

———————

[15] *Id.*

[16] *See id.* ¶ 19.